## JOE CARR v. THE STATE.

1. ASSAULT WITH INTENT TO MURDER.—See facts held sufficient, and such as not to require the court to instruct the jury as to aggravated and simple assault.
2. EVIDENCE OF FORMER QUARRELS between the parties may be admitted to show the state of mind of the accused at the time of the offense.
3. INSTRUCTIONS.—On a trial for assault with intent to murder, it is sufficient that the court give the law applicable to the facts considered with reference to the accusation, unless other instructions be asked. Nor will a verbal charge as to the lower grades of offense charged in the indictment be ground of reversal, unless excepted to at the trial.
4. INDICTMENT.—An indictment for *shooting* includes an *attempt to shoot;* and under such indictment evidence of *shooting at* the injured party is admissible.

APPEAL from Red River.   Tried below before the Hon. John C. Easton.

*Clark & Todd* and *Wright,* for appellant.

*Geo. W. Smith,* for the State.

ROBERTS, CHIEF JUSTICE.—The evidence shows that the defendant, armed with two pistols, placed himself in a position where John Dickson passed him in going to his dinner from his blacksmith shop to his house, and called him to an account by asking him questions about a difficulty that they had had on the day previously.   Dickson was in his "shirt sleeves," and unarmed.   Carr pressed the matter, and Dickson explained, acknowledged himself sorry if he had hit him the day before harder than he thought he had, proposed to drop it, and started towards home. The defendant, still not satisfied, uttered a harsh expression towards Dickson, (which need not be here repeated,) and, as Dickson swears, put his hand on his pistol.   Dickson stoops down, picks up a brick-bat, and, as he raises up, throws it at defendant, and defendant shoots at Dickson at or near the same time.   Dickson rushes upon Carr, seizes his pistol, and in doing so gets his thumb mashed between the hammer and tube, showing a second effort to shoot on the part of Carr.   Dickson wrenches the pistol from Carr's hand, and he immediately draws another pistol, which is taken from him by Ike Jones, who was then working with and was walking in company with Dickson to their dinner, and who in his evidence confirms substantially Dickson's statement as to the difficulty.   Carr being thus disarmed, the matter ended.   Another witness, who was forty yards distant, stated that he saw Dickson get the brick-bat and throw it at Carr, who, dodging it, put his hand to his side, drew his pistol, and shot at Dickson.   He says he was looking at Dickson, and did not see what Carr was doing until Dickson threw the brick-bat.   Another witness, who was at some distance, says that the throwing of the brick-

bat and the firing of the pistol were about the same time. Dickson himself says that his throwing the brick-bat at Carr made him miss his aim. From all this evidence taken together it is evident that Carr deliberately put himself in position to bring on and then did provoke the difficulty, and that he either put his hand to his side to get his pistol before Dickson stooped to get the brick-bat, and was engaged in cocking it before he was thrown at, or that he had it cocked previously, and only delayed its use until he could provoke Dickson to do some act that would, as he supposed, excuse his drawing the cocked pistol and shooting him. In either event the jury was justified in the conclusion that he was guilty of an assault with intent to murder. We do not think, therefore, that the verdict of the jury was contrary to the law and the evidence, which was the first ground of the motion of defendant for a new trial after he was tried and found guilty.

The other grounds of the motion for a new trial may be arranged under three heads: First, that the court erred in admitting the evidence, over the objection of the defendant, of the difficulty that occurred between the same parties the preceding day. In this we think the judge ruled correctly, for the reason which he gives in the bill of exceptions, "to show the state of the prisoner's mind." Second, that "the court misdirected the jury as to the law."

The court substantially charged the law of the case, as applicable to the facts in evidence, considered in reference to the charge embraced in the indictment of an assault with intent to murder, and told the jury, in conclusion, if they had a reasonable doubt of the defendant's guilt, to acquit him. This much the code required him to do, it being a case of felony. (Pas. Dig., art. 3059.)

And this was sufficient, unless there was evidence tending to establish and from which the jury might have concluded the offense to be a lower grade than that of an assault with intent to murder, as an aggravated or a simple

assault, in which event it was incumbent on the court, in a case of felony especially, to instruct the jury upon the different grades of assault, so as to leave the jury free to find the defendant guilty of either, according to their conviction of the truth as established by the evidence. We cannot say that the evidence presented any such double aspect in this case, so as to make a failure to charge specially on the minor grade of assault included in the indictment error on the part of the court, when none such were asked by the defendant on the trial.

The court, however, did instruct the jury that they might find the defendant guilty of an aggravated or simple assault, and, as he states in his charge, read to the jury the law relating thereto from "our Criminal Code." This reading of the law to the jury from the code may be regarded as a verbal charge, and, if so regarded, it, within itself, might have been ground of error under the positive inhibition of the code, if, as required by the code, it had been excepted to by the defendant at the time. (Pas. Dig., arts. 3064, 3067.) However improper this was in view of the article of the Code of Criminal Procedure, which says that "no verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties," (art. 3064,) it is not often made a ground of error, unless excepted to at the time, (art. 3067;) and, considered in reference to this case, we cannot see how it can be held to be a "misdirection to the jury as to the law" by the court. For if it had been written in the charge as read from the code, it would not have prejudiced the defendant, and, as before shown, if it had been entirely omitted in the charge, not being requested by the defendant, it would not have been error under the facts of this case.

The last ground of the motion for new trial was in substance that the facts proved were not responsive and correspondent to the facts charged in the indictment. The

indictment in effect charges the defendant with having shot John Dickson with a pistol, with intent to murder him. The word "assault" is not in the indictment. The evidence shows beyond a question that Carr shot at Dickson and missed him. This raises the question, Does the proof sustain the allegations in the indictment, so far as it is necessary to make the conviction legal?

Search has been made in vain in the books of forms for such an indictment for the offense attempted to be charged. There is nothing found in our Code of Criminal Procedure which seems to require its adoption in this or any other like case. We have failed to discover any peculiarity in the facts of this case to force the pleader into an experimental innovation upon well-established forms. In the absence of all precedents, the question must be solved on first principles. We find it laid down anciently, and not contradicted by any modern authority, that every battery includes an assault. (3 Chit. Cr. Law, note, p. 831, referring to Terms de la Ley Battery and Com. Dig. Battery.) In a case where an assault was charged, proof of a battery was held to include the assault. (19 Eng. Com. L., 4 Car. & Payne, N. P., marg. p. 239.) Therefore the act of shooting Dixon, as alleged, includes the act of assaulting him, as proved.

Notwithstanding the proceedings may not be altogether so formal and regular as the facts of the case are plain, we find no substantial error which requires a reversal of the conviction.

JUDGMENT AFFIRMED.