Dick Shields v. The State.

*No. 647. Decided October 25.*

1. **Assault with Intent to Rape—Evidence—Character of Prosecutrix.**—In prosecutions for assault with intent to rape, evidence of the reputation of the prosecutrix for chastity is admissible.

2. **Assault with Intent to Rape — Essentials of.**—To constitute the crime of assault with intent to commit rape, the assault must be accompanied with:
    1. The specific intention to rape; to have carnal knowledge of the woman.
    2. To have carnal knowledge of the woman without her consent.
    3. To have carnal knowledge by force.
    4. To have carnal knowledge of the woman without her consent, and by the use of such means as is sufficient to overcome such resistance as the woman should make.

3. **Same—Charge of Court—"Force," Character of.**—On a trial for assault with intent to rape, it is the duty of the court to instruct the jury as to the character of force necessary to constitute the crime; that is, that it must be such force as might be reasonably supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case. Following Brown v. The State, 27 Texas Cr. App., 330.

4. **Same — Charge — Aggravated Assault and Battery.**—On a trial for assault to rape, where the evidence raises the issue of intent as to overcoming resistance, and there has been proved violent and indecent familiarity with the person of the prosecutrix without her consent, it is the duty of the court to submit to the jury in the charge the law of aggravated assault and battery.

5. **Same—Evidence Insufficient.**—See the opinion for facts stated which are held wholly insufficient to support a conviction for assault with intent to rape. Simkins, J., dissenting.

APPEAL from the District Court of Bexar.   Tried below before Hon. GEORGE H. NOONAN.

This appeal is from a conviction for assault with intent to rape, wherein the punishment assessed was imprisonment in the penitentiary for a term of two years.

The facts are sufficiently stated in the opinion.

*Ed. Haltom*, for appellant.—The statute, in defining force, says, "It must be such as might be reasonably supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case." Now, as this offense can only be committed by the use of force as that word is used in the definition of rape, the jury should have been charged, that before convicting appellant they must find it to be a fact that he intended when he made the assault to have carnal knowledge of the woman, and intended to use such force " as might be reasonably supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case." If the defendant did not intend when he made the assault to overcome resistance on the part of the woman by the use of such force as that mentioned in the statute, it was not an assault with intent to rape.

This question was fully discussed by this court in the cases of Brown v. The State, 27 Texas Criminal Appeals, 330, and Walton v. The State, 29 Texas Criminal Appeals, 164.

In the Walton case the court use this language: " Now, rape by force, as defined by article 528 of the Penal Code, is carnal knowledge of a woman obtained by force, without her consent. ' Force,' as used in said article, is such force as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case. Penal Code, art. 529. This statutory force is an essential constituent of the full and complete substantive offense of rape; and when a party is charged with intent to rape, he is charged with intending to use such ' force,' and the jury must be instructed that they must find that he intended to use such force before they can convict him."

The court erred in its charge to the jury in failing to submit the issue of aggravated assault. The prosecutrix says, when she told appellant if he put his hand on her she would hurt him, he abandoned the assault. That he told her he loved her; begged her to kiss him, and attempted to kiss her; said he was going to sleep with her, and asked her not to tell her husband. He left when he got ready. Pefferling v. The State, 40 Texas, 486; Curry v. The State, 4 Texas Cr. App., 574; McGee v. The State, 21 Texas Cr. App., 670; Brown v. The State, 7 Texas Cr. App., 569; Veal v. The State, 8 Texas Cr. App., 474; Jones v. The State, 18 Texas Cr. App., 485; Irving v. The State, 9 Texas Cr. App., 66; Sadler v.

The State, 12 Texas Cr. App., 194; Sanford v. The State, 12 Texas Cr. App., 196; Thomas v. The State, 16 Texas Cr. App., 535.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Conviction for assault with intent to rape. The prosecutrix testified as follows: " My name is Josephine Taylor. I am married, and was married on and before October 7, 1889. I then had four children; the oldest was 7 years old. I live now, and did in October, 1889, in Bexar County, in what is called the Posites settlement. The neighborhood is tolerably thickly settled; my nearest neighbor is a half or three-quarters of a mile. Myself and children were at home on the night of October 7, 1889. I know the defendant, Dick Shields (identifies him). On the night of October 7, 1889, I saw the defendant at my house. The first I saw of him he was standing in my front door. I was in my house, in bed, and heard some one push the door, and I said, ' Who is there ? ' This was late in the night; and I had a chair against the door. As I heard some one push the door, I said, ' Who's there ? Is that you Dick ? ' He said, ' Good evening.' I said, ' Is that you Dick ? ' He said, ' Is Joe got any cartridges—44s ? ' I said, ' No; what are you here for ? ' He said, 'Joe sent me here.' Joe is my husband. I said, ' What is the matter with Joe ? ' He did not give me any answer till I spoke the third time. He sank down on the bed and said, ' He [Joe] can't get home to-night.' Joe had gone to San Antonio, and was on the road. I don't know who all went on the road with Joe, but Dick Shields started out with him. Yes, sir, defendant sank down on the bed, and when he said there was nothing the matter with my husband, I was excited, and knew he was there for no good purpose. I struck at him with my right hand, and he caught it and held it tight, and made my hand ache. He said, ' I have come to-night to see you. 1 have always loved you; I spoke to you every time and you do not speak to me.' He said, ' I came to tell you how much I love you, and came to have a good time.' I told him to leave my house. He had taken out a flask of some kind and said, 'Josie, I want you to drink with me; forgive me.' I said I would not. He said, 'Josie, kiss me then.' I told him I would not, and told him to get out. He said, ' I am a good mind to kill you, rather than have you tell your husband.' When he told me how much he loved me and wanted me to kiss him, I told him to go home to his own wife. He said, 'Josie, my wife has fooled me; that baby is not mine.' He said, 'Josie, kiss me.' I said I would not, and he said he would make me kiss him. He put his hand on my thigh and his right knee on the bed. I asked him what he meant. He said, ' I am going to sleep with you, here.' I said, ' No;' and I raised up on the pillow, and he grabbed at me and said, 'I will make you kiss me.' He grabbed a piece out of my dress

here (indicating) and it hung down. I knocked his hand off, and he said, 'I will make you kiss me; you will not forgive me; you will not promise not to tell Joe.' He then rushed at me and grabbed me with both hands. I pushed him, and he was drunk enough to stagger. I had only a gown, and picked up a wrapper off the little girls' bed and ran into the side room of the house. I heard his footsteps following me. I opened the room door and ran out on the gallery. I heard him coming out there, and I thought it would not do to leave the house. I then rushed back in the house at the same door he came in at. I ran against the chair at the door that he moved when he pushed it open, and he heard me and came in there. There were some few coals on the fireplace, and I threw some kindling on it to make a light; it was a little dark in the room—not enough light to see clearly. When he first came in the door he struck a match, and when the match burned he blew it out again. When he came back in the room again I said, 'Dick, do not put your hands on me again or I shall hurt you.' He picked up a chair and turned it down and sat on it. I said, 'Leave, Dick.' He said he would when I promised not to tell Joe. Then my little girl raised up and looked at him. When he walked to the door my little girl raised up and looked at him. He said, ' Look at these children; if you tell Joe I will kill him and leave these children fatherless. I am under one bond for killing a man, and if you tell him I will kill him before your eyes.' He did not leave then, but left when he got ready. He made no further assault on me.

" When I ran out on the gallery I did not cry out or scream, because I was scared. There are two doors on the gallery. When I went into the side room I left the house by a door there, and came back in at the door the defendant entered. I was afraid, and did not cry out. The defendant had a pistol; I was afraid he would shoot me; he had it in his hand. I did not see it when I was running from him. I saw it when he first came in. I have known defendant about ten years; may be a little more. He lives in my neighborhood. The defendant there (pointing) is the man. The next morning I saw defendant again. He came to my house and asked for fire. I told him I had no fire for him. He went right in the house and lit his cigarette. When he got out he asked me if I had made up my mind not to tell Joe. I said I had not made up my mind to anything. The next night I saw defendant again, at my house. He came there, to the fence, and hallooed. I spoke to my husband, and said, ' That's Dick; he said he was coming to kill you.' My husband had returned home about 1 o'clock in the day, after Dick had left there in the morning. I told my husband all about it. When Dick was hallooing out there at the fence, I said, 'Don't go out there; that is Dick; he said he was going to kill you.' He then told Dick to leave. This was about 8 or 9 o'clock at night. Defendant came up on the gallery and

kept on hallooing, 'Joe, Joe; oh, Joe.' Then he came inside the fence and up on the gallery. Joe said, 'What do you want?' He said, 'I want to apologize.' Joe went to the door and opened it just a little bit. I went to my husband and I saw Dick standing with one foot on the gallery. He had his right hand in his coat pocket. Dick said, 'Joe, I have come to tell you something.' I told Joe to tell him he would see him in the morning; he told him, and he went away. About a week after, I made the complaint upon which defendant was arrested. I did not make the complaint sooner because me and my little girl were sick from being exposed; from being run around in my night clothes. This all occurred in Bexar County, Texas. When defendant was at the bed, he had his hand on my thigh and pressed me until it hurt me. It was not light enough for me to see whether his person was exposed or not."

Question: "What effort did he make, if any?"

Answer: "He caught me and was going to kiss me. I got away from him; and he said he was going to make me kiss him, and was going to sleep with me."

Upon the trial, appellant proposed to prove by several witnesses that the prosecutrix's general reputation for chastity was bad. On objection by the State, the proposed proof was rejected by the court. This was error. If such was the character of the prosecutrix, the presumption is that appellant was aware of it. Horback v. The State, 43 Texas, 242.

What purpose could such proof subserve? Explain the conduct of appellant towards the prosecutrix. Men take liberties with fallen women without intending a rape, while they would not with chaste ladies.

The court omitted to define to the jury what degree of force must be intended by the accused to constitute an assault with intent to ravish. The omission was excepted to at the proper time. Was this required in this character of case? In rape it is. In assault to rape, why not? Rape is the carnal knowledge of a woman without her consent, obtained by force. (Neither threats nor fraud are in this case.) What character of force? Such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case. In an assault to rape, to be guilty, the accused must make an assault upon the woman. The assault must be accompanied with the specific intention to rape; with the specific intention to have carnal knowledge of the woman; to have carnal knowledge of the woman by force; to have carnal knowledge of the woman without her consent, and by the use of such force as is sufficient to overcome such resistance as the woman should make. We can not conceive it possible for a man to assault a woman, with intent to ravish her, without intending to do (to accomplish his purpose) all that which the law requires to be done to constitute rape. This proposition, we think, is evident.

How stand the authorities? In Rex v. Floyd, 7 C. & P., 318, Patterson, J., in summing up, said, "In order to find the prisoner guilty of an assault with intent to commit rape, you must be satisfied that the prisoner, when he laid hold of the prosecutrix, not only desired to gratify his passions upon her person, but that he intended to do so at all events, and notwithstanding any resistance on her part." See also Regina v. Wright, 4 F. & F., 967.

Henry, Justice (in The State v. Priestly), says: "It must appear from the evidence, that the defendant's intention was, if it became necessary, to force a compliance with his desires at all events, and regardless of any resistance made by his victim." Citing in support of this position, Commonwealth v. Merrill, 14 Gray, 415; Reynolds v. The People, 41 How. Pr. Rep., 179; Jones v. The State, 53 Ga., 5; The State v. Burgdorf, 53 Md., 65; and we will add Mahoney v. The People, 43 Mich., 39; The State v. Hagerman, 47 Iowa, 151; Taylor v. The State, 50 Ga., 79.

In this State the same rule is announced. Brown v. The State, 27 Texas Cr. App., 330.

Appellant excepted to the charge because it did not submit to the jury the law of aggravated assault and battery.

While the conduct of appellant was reprehensible in the extreme, and the violent and indecent familiarity with the person of the prosecutrix against her will may or may not have been for the purpose of having carnal knowledge of her without her consent, and at all events, whether resisted or not, whether he intended to so accomplish his purpose being an issue in the case (made so by the evidence), it was the duty of the court to submit this issue to the jury by proper instructions. See Pefferling v. The State, 40 Texas, 486, in which the facts are much stronger against the accused than they are in this case.

For the reasons indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Simkins, J., dissents.