PALMORE EVERETT v. THE STATE.

No. 4780. Decided December 19, 1917.

**Assault with Intent to Rape—Aggravated Assault—Charge of Court.**

Where, upon trial of an assault with intent to rape, there was no evidence from which the jury might conclude that the assault, if made, was with the intent to accomplish rape by the use of force necessary to overcome resistance, the court should have submitted a charge upon aggravated assault, and the failure to do so upon request was reversible error. Following Herbert v. State, 49 Texas Crim. Rep., 72, and other cases.

Appeal from the District Court of Titus. Tried below before the Hon. J. R. Warren.

Appeal from a conviction of assault with intent to rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was charged with an assault with intent to rape Etta Mae Harper by force, threats and fraud. His punishment was fixed at two years confinement in the State penitentiary.

There was an issue of identity and of alibi which, on conflicting evidence and a proper charge, were determined against appellant. The assault took place about sundown on the evening of the 19th of June, on the public road at a point very near a store building and cold drink stand, at which there was in progress an emancipation day celebration. The injured party, a girl about fifteen years of age, testified that prior

to the occasion she had never seen appellant; that about sundown she, in company with her aunt, her cousin and her sister, were walking along the road, starting away from the gathering, when she was assaulted by appellant. We copy from her testimony as follows: "It was just about sundown when I saw the defendant. He asked me to let him go home with me and I told him no, and he said he was going anyhow. He tried to pull me out in the woods and I went to hollering. He caught hold of me and tried to pull up my dress and then they ran down there and he turned me loose and went to running. When he caught me those other girls were going on up the road ahead of us. He did not hurt me; he just kind of scratched me on my arm and across my side a little bit. I had on a dress and he tore it right up here. Nobody did anything to him. Uncle Early ran back there and he seen him and run. My sister started back with a stick and he went to cursing and she broke and run herself. There was some woods around there. We were in the big road. He was by himself walking. Two wagons passed us when he was there with me, but I don't know who it was in them; they were colored people. One of the girls with me got in one of the wagons. It did not stop but was driving slow. Defendant was there then. He went about as far as from here to the back door with me before he said anything. He tried to pull up my dress and I went to hollering. My uncle and Joe Marshall came down there and the defendant ran. I was coming along the road towards the storehouse and wasn't as far as from here to the wall from it. I don't know whether that is thirty or thirty-five feet or not; it is not as much as twenty-five steps. My aunt's little girl and my sister were right in front of me, about as far as from me to you. I don't think there was hardly as many as a hundred people at the store, but there was a crowd there. He did not ask me loud enough for those folks in front of me to hear; he talked low. He first asked me to let him go home with me and I refused; then he asked me for some, and then he grabbed me and took hold of me. He did not put his arm around my waist or hug or kiss me or tell me he loved me; he just caught hold of my arm and scratched it. He was trying to pull up my dress and scratched my side. It was right there before all those people. The ones who were in front of me told him to let me alone. They did not holler at him, I don't know why. My aunt did not see him when he carried me down the road; my sister and my aunt's little girl seen it. My aunt was in ahead of the girls on the road, but not far ahead. She was pretty far down the road when she turned and seen it. The girls turned at once and saw it. He was carrying me forward towards where my aunt was. He did not throw me down but he tried to. My aunt's little girl ran and told my uncle. There was lots of people at the storehouse, but I don't know how many. I was not making an resistance to keep him from throwing me down; I was hollering and crying. I don't know who the woman was that passed in a wagon. He was trying

to rape me then. There were other people in the wagon with that woman; I guess it was her old man and children. They were all black."

The mother of the injured girl testified that she was past fifteen years of age. The other girls with her were about the same age. These other girls and the aunt who was with her testified, in substance, as did Etta Mae Harper. One of them said: "I picked up a stick and started back with it, but never got close to him; he ran. I don't know what made him run. Uncle Early and them came up and he ran. He pulled her just a little bit on the side of the road. That boy grabbed my sister by the arm and was pulling her, and another girl ran up and told my uncle about it. Uncle Early White and Joe Mitchell passed by us in a wagon just before that, and Aunt Ada was with them. There was a wagon passed by and someone in it told my sister that boy was married. I don't know who was in the wagon. That was not before she hollered. The defendant had hold of my sister at that time. I don't know for what purpose. I heard him tell her he wanted to go home with her; he was just talking in an ordinary tone of voice. We had just started home and we could see all around there; it was light enough to see things. When I saw him he tried to throw her down in the road. He was not trying to throw her down in the road, but was trying to pull her out of the road. That was not such woods as a man could lay a woman down and have sexual intercourse with her without the people around seeing them; it was a heap of people around there."

One of the girls with the injured party said: "I heard that girl holler, 'Oh, Uncle Early, make this here boy turn me loose.' I ran back to make him turn her loose and he ran after me and I ran for Uncle Early. He said, 'Give me some.' She told him she wasn't studying him. At the time he asked her she commenced hollering for Uncle Early. He had hold of her around the waist and was pulling her. We were about twelve feet ahead of her. We were not far from the cold drink stand. There was a big crowd back there around the storehouse; they had not broke up."

Another witness testified: "I was traveling in a wagon with my brother, Early White, and we passed by them; they were all together when we passed them. The defendant was walking by the side of Etta Mae. Not very long after I got in the wagon I heard some hollering; we were not so far ahead of it." Early White said: "My sister, Ada, was walking with them and I told her to get in the wagon and ride down the hill a piece and let the girls walk, and as we started, when we got even with Andrew Evans' house, Ada got in the wagon with us and went on down a good piece from there, and Hattie overtook us and said that boy was beating the girl and I jumped out of the wagon. Joe Mitchell went back there with me. I heard some hollering before I went back; it was a woman, the way they were screaming."

The court gave no charge on aggravated assault. The appellant prepared and the court refused a charge submitting that issue. It contained the following: "If you believe from the evidence in this case,

beyond a reasonable doubt, that the defendant, Palmore Everett, did, in Titus County, Texas, on or about the 19th day of June, 1917, make an assault and battery upon Etta Mae Harper, but you have a reasonable doubt as to whether or not he made said assault with the specific intent to rape the said Etta Mae Harper by force, and to have carnal intercourse with her, over all resistance she might be able to offer, then you will find the defendant guilty of an aggravated assault and battery." If appellant made an assault with intent to rape, his abandonment would not excuse him. Sheppard v. State, 34 Texas Crim. Rep., 35. As said by Mr. Branch: "If the testimony shows an assault coupled with a present intention to have carnal knowledge of the woman without her consent by force and at all hazards, it will support a conviction for assault with intent to rape though defendant fled or desisted when assistance came." Stout v. State, 22 Texas Crim. App., 339; Branch's Ann. P. C., and cases listed, p. 966. The same author, in section 1700, page 966, of Branch's Ann. P. C., citing many authorities, including Pefferling v. State, 40 Texas, 492, and Taff v. State, 65 Texas Crim. Rep., 80, 143 S. W. Rep., 1156, states the rule as follows: "When the female is not alleged to have been under the age of consent, to be guilty of an assault to commit rape the defendant must have made an assault upon the woman with the intent to then have carnal knowledge of her by the use of such force as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case, and if his intention falls short of this, he is not guilty of an assault with intent to rape, however outrageous the assault may be. There must be sufficient evidence to authorize the jury to believe that it was his intention to have the carnal knowledge at the time at all hazards; that he intended to use sufficient force to accomplish his purpose notwithstanding any resistance the woman might make." The same author at section 1712, page 969, stating the rule with reference to the necessity of a charge on aggravated assault in this character of case, uses the following language, and cites the following authorities: "There is a manifest difference between an assault with intent to commit rape and an assault with intent to have an improper connection; any such violent and indecent familiarity with the person of a woman against her will when the latter is the extent of the purpose and intent of defendant is an aggravated assault, and if the testimony raises such issue it is error to fail or refuse to charge on aggravated assault. Pefferling v. State, 40 Texas, 492; Curry v. State, 4 Texas Crim. App., 574; Thomas v. State, 16 Texas Crim. App., 535; McGee v. State, 21 Texas Crim. App., 670, 2 S. W. Rep., 890; Robertson v. State, 30 Texas Crim. App., 498, 17 S. W. Rep., 1068; Shields v. State, 32 Texas Crim. Rep., 503, 23 S. W. Rep., 893; Cox v. State, 44 S. W. Rep., 157; McCullough v. State, 47 S. W. Rep., 990; Taylor v. State, 50 Texas Crim. Rep., 362, 97 S. W. Rep., 94; Taff v. State, 65 Texas Crim. Rep., 80, 143 S. W. Rep., 1156." Such is the general rule: Wharton Crim. Law, section 48, and notes.

In a prosecution for this offense in which there is no evidence from

which the jury might conclude that the assault, if made, was made with the intent to accomplish rape by the use of force necessary to overcome resistance, the submission of the issue of aggravated assault is not called for. Long v. State, 46 S. W. Rep., 640; Rix v. State, 48 Texas Crim. Rep., 229; Herbert v. State, 49 Texas Crim. Rep., 72. This is the principle relied upon by the State to support the action of the trial court in refusing to give the special charge requested. We regard this is an erroneous view as applied to the facts of this case. The assault proved, we think, was made under circumstances which raised the issue of fact as to whether the intent of the appellant was to force the injured party over all resistance to submit to sexual intercourse. The assault is made at a time of the day when it was subject to the observation of persons nearby, at a place within a few yards and in plain view of a large gathering of people, and upon a road which some of the people at the gathering were at the time traveling so close to appellant and his victim that members of the party with them got into the vehicles passing. At the time of the assault the injured female was accompanied by several people, including her aunt, her sister and her cousin, with her uncle only a few yards away, and within calling distance of a number of people gathered at the picnic.

A refusal of the court to submit to the jury the issue of aggravated assault was, we think, under the circumstances, error requiring a reversal of the judgment, which is ordered.

*Reversed and remanded.*