Oscar M. DOVALINA, Appellant,

v.

The STATE of Texas, Appellee.

No. 53797.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 22, 1978.

Rehearing En Banc Denied May 3, 1978.

Will Gray, Houston, court-appointed, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Henry K. Oncken, Asst. Dist. Attys., Houston, for the State.

## OPINION

DOUGLAS, Judge.

Appellant was convicted for the offense of attempted capital murder of a policeman under V.T.C.A., Penal Code, Sections 15.-

01(a) and 19.03(a)(1). The jury assessed punishment at 50 years.

At approximately 6:05 p. m. on May 23, 1975, Department of Public Safety Narcotics Agent Powell and Detective Bush of the Harris County Sheriff's Department, went to the Houston apartment of James Tatum to arrest appellant and a female companion, Sylvia Nerios, pursuant to two arrest warrants for delivery of controlled substances. Tatum admitted the officers in the apartment, at which time Bush and Powell identified themselves as police officers. The officers discovered appellant and Nerios upstairs in the apartment, arrested them and seated them downstairs. Tatum was also arrested. Detective Bush went upstairs and found a M–1 carbine loaded with a clip in the bottom.

Nerios and appellant were handcuffed together and placed in the backseat of the Department of Public Safety car with appellant in the middle and Tatum, who was not handcuffed, on the left side. Officer Powell then drove the car with Detective Bush seated beside him in the front seat to a Steak and Ale Restaurant on Northwest Freeway to inform Sergeant Murray of the Department of Public Safety that the arrest had been made. As Bush entered the restaurant, Officer Powell remained in the car with the prisoners. As Powell was turning the vehicle around in the parking lot, appellant, who was still handcuffed, grabbed him around the neck and started stabbing him with a knife. Tatum took this opportunity to escape.

During the struggle appellant stabbed Powell in the top of the head, in the cheek, across the nose and in the groin. In the meantime Nerios escaped from the handcuffs, crawled to the front seat and grabbed Powell's service revolver that had fallen on the floorboard. Appellant said to Nerios: "Get the pistol, Sunshine, and shoot him." She pointed the pistol at Powell and pulled the trigger twice. The pistol did not fire because the safety was engaged. Appellant, Nerios and Powell continued to struggle for the pistol between the front and rear seats of the car. Powell was able to obtain the pistol as he continued to fight appellant. Powell testified, ". . . he (appellant) at first had control of the weapon and had it pointed at me and I got it turned around and got control of it and he had his finger behind the trigger in the trigger guard. . . ." Appellant was not able to fire the weapon. As the struggle continued Nerios got the M–1 carbine from under the front seat and inserted the ammunition clip and pointed the gun at Powell. Powell managed to escape from the car and ran toward the restaurant, meeting Detective Bush. Appellant fired at the officers, Bush fired a shot at appellant. Nerios and appellant attempted to leave the parking lot in the police car with appellant driving. The car stalled and appellant got out of the driver's side and fired a shot in the officers' direction, missing both of them. Bush fired a total of five shots before Nerios and the appellant drove away in the police car.

Their flight through Houston eventually led them to a Boise Cascade warehouse where they stole a janitor's 1970 Mustang. They were finally apprehended in this car after a high-speed freeway chase in which appellant attempted to fire the M–1 carbine at the pursing Houston police officer.

■ Although not raised at the trial, appellant contends that the indictment was fundamentally defective because it did not allege that the criminal attempt was made with the specific intent to commit the offense of capital murder. The indictment, in substance, alleged that appellant

".   .   . on or about May 23, 1975, did then and there unlawfully, knowingly and intentionally attempt to cause the death of Jerry Powell by cutting and stabbing him with a knife and by shooting him with a gun, the said Jerry Powell being a peace officer acting in the lawful discharge of his official duties and the said Defendant then and there knew the said Jerry Powell was a peace officer acting in the discharge of his official duty."

V.T.C.A., Penal Code, Section 15.01(a), defines criminal attempt as follows:

"(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."

Capital murder of a peace officer is defined in V.T.C.A., Penal Code, Section 19.03(a)(1), as follows:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and; "(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman."

The dissent would hold the indictment fundamentally defective because it did not allege that the assault was made with the specific intent to commit murder. A fairly recent case controlling the questions is *Lucero v. State*, 502 S.W.2d 750 (Tex.Cr. App.1973). Lucero was convicted for the offense of assault with intent to commit robbery. Instead of alleging that he made an assault with *intent* to commit the robbery, the indictment charged that there was an *"attempt"* to fraudulently take the property. This Court held:

"The word 'attempt' is used only once and appears to be properly used. See 4 Branch's Ann.P.C.2d, ed., Section 1891.1, page 221. Under any circumstances it would not appear that the use of the word 'attempt' instead of the word 'intent' would vitiate the indictment. *McCutcheon v. State*, Tex.Cr.App., 363 S.W.2d 457, 459."

The former penal code, Article 1160, provided:

"If any person shall assault another with intent to murder he shall be confined in the penitentiary for not less than two years nor more than life. . . ."

Article 1162 of the former penal code provided:

"If any person shall assault a woman with intent to commit the offense of rape, he shall be confined in the penitentiary for any term of years not less than two."

This Court held that under Article 1162, supra, the word "attempt" instead of "intent" may be alleged. *Greenlee v. State*, 4 Tex.App. 345 (1878). *Fowler v. State*, 66 Tex.Cr.R. 500, 148 S.W. 576 (1912).

In *Small v. State*, 116 Tex.Cr.R. 41, 32 S.W.2d 860 (1930), the Court held that an indictment charging the defendant with making an assault with intent to "kill" charged an assault with intent to murder under Article 1160, supra. In *Beal v. State*, 520 S.W.2d 907 (Tex.Cr.App.1975), the conviction was for murder under the former code. The indictment alleged that ". . . Beal . . . did murder with malice aforethought kill Michael Martelli, by shooting him with a gun . . . ." The Court held that the inclusion of the extra word "murder" is surplusage when "kill" is also alleged.

In the earlier cases of *Shields v. State*, 32 Tex.Cr.R. 498, 23 S.W. 893 (1893); *Passmore v. State*, 29 Tex.App. 241, 15 S.W. 286 (1891), this Court held that the assault must be accompanied with the specific intent to commit rape. Even in light of those holdings the Court, as noted above, held that the word "attempt" was sufficient to allege intent and the word "intent" did not have to be alleged.

In Black's Law Dictionary, Revised 4th ed., attempt "implies an intent and an actual effort to carry out or consummate the intent or purpose." Branch's Ann.P.C.2d, Section 1866, quotes the correct rule:

" 'Attempt' is a word more comprehensive of meaning than the word 'intent' and includes the latter. . . ."

For other cases holding that attempt may be substituted for intent see *Atkinson v. State*, 34 Tex.Cr.R. 424, 30 S.W. 1064 (1895); *Runnells v. State*, 34 Tex.Cr.R. 431, 30 S.W. 1065 (1895), and *Lucero v. State*, supra.

In *Mosely v. State*, 70 S.W. 546 (Tex.Cr. App.1902), the conviction was for assault with intent to murder. Mosely complained that the court erred in not instructing the jury in his charge on assault with intent to

murder that the jury must find that the defendant had the specific intent to kill, his contention being that the word "specific" was omitted from the court's charge. The Court noted that the charge required the jury to find beyond a reasonable doubt before they could convict that there must have been an assault with intent to murder on the part of the defendant and held that where the court instructed the jury that there had to be an intent to kill that the word "specific" did not have to be used. *Watts v. State*, 207 S.W.2d 94 (Tex.Cr.App. 1947), followed the holding in *Mosely*.

Other cases under the former penal code have been construed with regard to the allegation of "specific" intent to commit an offense. Notwithstanding the former code's requirement that there be a specific intent to kill, prior decisions have held that an indictment need not allege the word "specific."

The Code Construction Act, V.A.T.S., 5429b–2, Section 2.01, provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition, or otherwise, shall be construed accordingly."

Section 3.03 provides:

"In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the

" *    *    *

"(4) common law or former statutory provisions, including laws upon the same or similar subjects;

" .    . "

Some of the cases discussed above cover common law and former statutory provisions upon the same or similar subjects. The meaning of the words "attempt" and "intent" have not changed with the adoption of the present penal code.

*Baldwin v. State*, 538 S.W.2d 615 (Tex.Cr. App.1976), held:

"Since the appellant makes no complaint about the sufficiency of the indictment we do not reach the question of whether an indictment for attempted murder must specify murder  .  .  .."

The dissent is contrary to the *Baldwin* case. In the present case as in the *Baldwin* case there was no motion to quash. Murder, according to *Baldwin*, does not have to be mentioned in the indictment.

*Victory v. State*, 547 S.W.2d 1 (Tex.Cr. App.1977), is distinguishable. It was reversed because the indictment did not allege that the acts of the defendant were with "intent to arouse or gratify the sexual desire of any person."

In the present case the indictment alleged that appellant intentionally attempted to kill. This alleges the offense because attempt includes the word intent. V.T.C.A., Penal Code, Section 15.01(a). *Garcia v. State*, 541 S.W.2d 428 (Tex.Cr.App.1977), holds that the State did not have the burden of proving that a defendant had the specific intent to commit murder in an attempted murder case.

The Legislature has provided that the exact words in defining an offense do not have to be alleged in an indictment. Article 21.17, V.A.C.C.P., Following Statutory Words, provides:

"Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

■ The indictment alleges that the attempt to kill Officer Powell was by cutting and stabbing with a knife and by shooting him with a gun. The dissent would hold that the evidence is insufficient to support the conviction because the proof did not show that appellant shot Powell with a gun but only shot at him. The case of *Lucero v. State*, 502 S.W.2d 750 (Tex.Cr.App.1973), cited above, is in point. Several means were alleged for committing the offense of rape and the proof did not support all the means alleged. The Court held the evidence to be sufficient. The indictment al-

leged "by force, threats and fraud" and the proof offered to support his plea did not show any fraud. The Court cited *Dyer v. State*, 283 S.W. 820, 823 (Tex.Cr.App.1925), which held:

". . . It has always been the rule that an indictment which charges a rape to have been committed by force, threats, and fraud, is fully sustained by proof of any one of these three methods thus alleged. . . ."

For the same proposition, the Court cited 4 Branch's Ann.P.C.2d, Section 1937, page 256.

In *Medina v. State*, 49 S.W. 380 (Tex.Cr. App.1899), the indictment charged that the death of the deceased was occasioned by the defendant by beating her with a stick and a whip and by starving her and by hanging her with a rope. Judge Henderson, speaking for this Court, wrote:

"We believe the same was a good indictment and under it, in our opinion, *proof could be made of all the causes; and if any one was proved, it would be sufficient, or if all were proved, and together they cooperated to produce the death of the deceased, this could be done.*"

In *Helmus v. State*, 397 S.W.2d 437 (Tex. Cr.App.1966), the indictment alleged that the defendant killed the deceased by striking him with his hand and killed him in some manner and by some means, instrument or weapon to the grand jury unknown. The Court held that the indictment was sufficient and wrote that the conviction under either means alleged would be sufficient.

In 1897 in *Burt v. State*, 38 Tex.Cr. 397, 40 S.W. 1000, 39 L.R.A. 305, 330, on rehearing in 38 Tex.Cr.R. 397, 43 S.W. 344, the Court settled the question then and the rule has been settled up until now. There, Presiding Judge Hurt wrote:

"A number of methods, modes, and instruments were alleged to have been used in the perpetration of the crime. The indictment alleges that it was 'by then and there striking, beating, and wounding the said Anna M. Burt upon her head and face, with a hatchet and some heavy instrument, a better description of which the grand jurors are unable to give, thereby fracturing the skull and the bones of the face of the said Anna M. Burt, and by then and there tying tightly around the throat and neck of said Anna M. Burt a handkerchief, thereby strangling and suffocating the said Anna M. Burt, and by then and there wrapping around the head and body of said Anna M. Burt a blanket, and securely tying same thereon with rope, and then and there throwing said Anna M. Burt, so wrapped and tied, in a cistern partially filled with water, sufficient to submerge the body of said Anna M. Burt.' This indictment is correctly drawn. Where there is doubt about how the death was produced, *it is well to put every means suggested by proof in the indictment; and, if proof be made of one of the means, it is unnecessary to prove them all.* It is not necessary to cite any authority to sustain this proposition." (Emphasis supplied)

See also *Whiteside v. State*, 111 Tex.Cr. 116, 12 S.W.2d 218 (1928).

In *Anderson v. State*, 479 S.W.2d 57, 60 (Tex.Cr.App.1972), this Court wrote:

"[1] In situations such as this, to avoid possible variance, an indictment could be presented alleging in the conjunctive 'all possible means of doing the killing, including with an instrument to the Grand Jury unknown.' Proof of one of the means would suffice. See *Helmus v. State*, Tex.Cr.App., 397 S.W.2d 437 (1965), and *Burt v. State*, 38 Tex.Cr.R. 397, 40 S.W. 1000."

*Simon v. State*, 488 S.W.2d 439 (Tex.Cr. App.1972), involved an indictment which alleged striking and beating with a fist and means to the grand jurors unknown. This Court held that it was sufficient. Another case of like result is *Wall v. State*, 156 Cr.R. 239, 240 S.W.2d 763 (1951), where the means alleged of the killing were with fists and smothering and tying the feet and leaving the deceased bound and gagged.

In *Garcia v. State*, 537 S.W.2d 930 (Tex. Cr.App.1976), different means were alleged for killing. The State proved one and abandoned the other. The Court noted that the proof of one of the means was sufficient.

From the above, it can be seen that proof of one of the means alleged would be sufficient to support the conviction. However, the proof supports both of the allegations in the indictment including the one that he intended to kill the officer by shooting him with a gun even though the bullet did not hit the officer.

In the recent case of *Colman v. State*, 542 S.W.2d 144 (Tex.Cr.App.1976), the indictment alleged that Colman attempted capital murder of an officer by shooting him with a gun. He contended (as the appellant does in this case) that the evidence was insufficient because it showed that he only shot at the officer but missed him. The Court wrote:

"We are not impressed by this ingenious but sophisticated argument."

The Court cited *Williams v. State*, 449 S.W.2d 271 (Tex.Cr.App.1969), where the same contention had been made and overruled. See also *Perez v. State*, 114 Tex. Cr.R. 473, 22 S.W.2d 309 (1929); *McIntire v. State*, 105 Tex.Cr.R. 403, 289 S.W. 48 (1926); *Carr v. State*, 41 Tex. 543. The correct rule is also found in 4 Branch's Ann.P.C.2d, Section 1797, page 168.

We hold that the evidence is sufficient to support the allegations in the indictment.

■ Appellant complains that the court erred in refusing to charge on aggravated assault. Appellant did not testify and offered no evidence. There is no evidence that he did not intend to kill the officer. There is nothing which would show that he would be guilty of only the lesser offense of aggravated assault. See *Day v. State*, 532 S.W.2d 302, 308 (Tex.Cr.App.); *McBrayer v. State*, 504 S.W.2d 445 (Tex.Cr.App.1974).

In *Daywood v. State*, 157 Tex.Cr.R. 266, 248 S.W.2d 479 (1952), Judge Morrison wrote for the Court:

". . . At this juncture, it will be noted that, merely because a lesser offense is included within the proof of a greater offense, a charge on the lesser is not required unless there is testimony raising the issue that the appellant, if guilty at all, is guilty only of a lesser offense included in the greater offense charged."

There was no error in the trial court's refusal to charge on aggravated assault.

■ Lastly, appellant complains that the prosecutor in his argument commented on the appellant's failure to testify. The prosecutor argued:

"The only thing that cannot be corroborated by anyone else is exactly what happened in that car and the defendant and Agent Powell and Sylvia Nerios were in that car and you heard Agent Powell tell you what happened."

Just before the above argument was made, the prosecutor had informed the jury that practically all of what the wounded officer had testified to had been corroborated by civilian witnesses. He explained that the only testimony by the officer that was not corroborated by other witnesses "is exactly what happened in the car and the defendant and Agent Powell and Sylvia Nerios were in that car." The agent's testimony had sufficiently recounted what took place in the car. The prosecutor was not suggesting that no explanation as to what occurred in the car had been made.

Even if it could be said that the State was arguing that no explanation of the circumstances had been made, a reversal would not be required. Appellant was not the only other person who could have testified as to what took place in the car. Sylvia Nerios was also in the car. *Beal v. State*, 520 S.W.2d 907 (Tex.Cr.App.1975). No error is shown.

There being no reversible error, the judgment is affirmed.

ODOM, Judge, concurring.

I agree that the indictment in the instant case is not fundamentally defective, but

disagree with the majority's reliance on *Baldwin v. State*, Tex.Cr.App., 538 S.W.2d 615, and *Garcia v. State*, Tex.Cr.App., 541 S.W.2d 428.

The majority cite ample authority for the proposition that the use of "attempt" in this indictment is sufficient to constitute an allegation of "intent". Regarding these terms, the Court in *Cirul v. State*, 83 Tex. Cr.R. 8, 200 S.W. 1088, quoted with approval from Words and Phrases:

"The word 'attempt' is more comprehensive than the word 'intent', implying both the purpose and an actual effort to carry that purpose into execution. . .

"The only distinction between an 'intent' and an 'attempt' to do a thing is that the former implies purpose only, while the latter implies both the purpose and an actual effort to carry that purpose into execution; . . . the word 'attempt' embraces the full meaning of 'intent' with something more, . . ."

The indictment in this case alleged that appellant:

". . . did then and there unlawfully, knowingly and intentionally attempt to cause the death of Jerry Powell, by cutting and stabbing him with a knife and by shooting him with a gun, the said Jerry Powell being a peace officer acting in the lawful discharge of his official duties and the said defendant then and there knew the said Jerry Powell was a peace officer acting in the discharge of his official duties. . . ."

Although this indictment is not drafted with great clarity, and is not a model for future pleading, by a strictly grammatical alteration of its form, without changing the substance of its allegations, its content may be more clearly seen when written like this:

". . . did then and there unlawfully, knowingly and intentionally cut and stab Jerry Powell with a knife and shoot him with a gun, the said Jerry Powell being a peace officer acting in the lawful discharge of his official duties and the said defendant then and there knew the said Jerry Powell was a peace officer

acting in the discharge of his official duties, and the said defendant did thereby attempt to cause the death of the said Jerry Powell. . . ."

From this understanding of the substance of the indictment, with the recognition that an "attempt to cause the death" of an individual necessarily includes the intent to cause the death of an individual, it cannot be denied that the indictment alleges the requisite intent to commit murder (see V.T. C.A., Penal Code Sec. 19.02(a)(1)).

While I concur in the majority's conclusion that the indictment in this case is not fundamentally defective, I do not agree that it would be sufficient merely to allege "that appellant intentionally attempted to kill," as suggested by the majority. The indictment must also allege the acts constituting the offense since *it is fundamental that an indictment is an instrument that alleges facts and not merely a legal conclusion*. This fundamental principle was discussed in *Williams v. State*, 12 Tex.App. 395, 400:

"What is meant by the word 'indictment?' . . ."

\* \* \* \* \* \*

"It must be framed with sufficient certainty; for this purpose the charge must contain a description of the crime or misdemeanor of which the defendant is accused, and a *statement of the facts by which it is constituted*, so as to identify the accusation."

\* \* \* \* \* \*

" 'The indictment must show on its face . . . that a person mentioned therein has done . . . *such and such particular acts*, at a specific time; *which acts, so done, constitute what the court can see, as a question of law, to be a crime*,' etc. (1 Bish.Cr.Pro.Sec. 135)

" 'An indictment is the written statement of a grand jury, accusing a person therein named of *some act or omission which, by law, is declared to be an offense*.' (Code Crim.Proc. art. 419. [Art. 21.01, V.A.C.C.P.])

"Chief Justice Roberts, in *Hewitt v. State*, 25 Texas, 722, quotes the above definition from our Code, and says: 'At the adoption of our Constitution, and for a century previously, both in England and America, this is what was understood as constituting an indictment.'"

\*       \*       \*       \*       \*       \*

"We think it clear from these authorities that the meaning of the word 'indictment' in the Bill of Rights requires that it should state *the essential acts or omissions which constitute the offense* with which the party is accused. It must charge explicitly all that is essential to constitute the offense, and cannot be aided by intendments. *A statement of a legal result, a conclusion of law, will not be sufficient; the facts constituting the crime must be set forth, that the conclusion of law may be arrived at from the facts so stated.*" (Emphasis added throughout.)

This early case dramatically illustrates the principle:

"The charging part of the indictment is as follows: 'Joseph Brinster, an adult male did rape Mrs. Mattie McL. Davis, a female.'

"This indictment does not allege a single *act* which enters into and composes one of the elements of rape. An indictment is a written statement of a grand jury, accusing a person therein named of some act or omission punished by law. Subjecting the indictment in this case to the above definition, it evidently follows that *it is no indictment at all.*" *Brinster v. State*, 12 Tex.App. 612, 613. (Emphasis added.) See also *Drye v. State*, 14 Tex.App. 185, 191.

A criminal accusation that merely alleges a legal conclusion is not an indictment; to be an indictment the instrument must allege facts. An allegation that appellant attempted to kill, without more, would be insufficient. See *Drye v. State*, supra.

I am also unable to agree with the majority's reliance on *Baldwin v. State*, Tex.Cr. App., 538 S.W.2d 615, and *Garcia v. State*, Tex.Cr.App., 541 S.W.2d 428. Those cases should be overruled. By the strange logic used in those two cases the Class A misdemeanor of attempted aggravated assault under V.T.C.A., Penal Code Secs. 15.01(a) and 22.02(a)(1) is treated as attempted murder.

In *Baldwin v. State*, supra, the majority construed Sec. 15.01, supra, in conjunction with murder under Sec. 19.02(a)(2), to reach the conclusion:

"A specific intent to kill is not required under V.T.C.A. Penal Code, Sec. 19.02(a)(2) for the offense of murder to be committed. The specific intent, therefore, required under V.T.C.A. Penal Code, Sec. 15.01 [for attempted murder] would not be a specific intent to kill but need only be the intent to cause serious bodily injury."

In *Garcia v. State*, supra, this position was again taken:

"[T]o prove an 'attempted murder' it is sufficient if the accused has the intent to cause serious bodily injury and commits an act 'amounting to more than mere preparation' that could cause the death of an individual but fails to do so."

Section 15.01(a), supra, provides:

"A person commits an offense if, *with specific intent to commit an offense*, he does an act amounting to more than mere preparation that tends but fails to effect the commission *of the offense intended.*" (Emphasis added.)

*Baldwin* misconstrued the requirement of a specific intent *to commit an offense* by stating that the accompanying specific intent to cause serious bodily injury, required for murder under Sec. 19.02(a)(2), would suffice. Such intent to cause serious bodily injury is not the same as the intent to commit the offense of murder. A killing under Sec. 19.02(a)(2) is murder notwithstanding the fact that no murder was intended. And for precisely that reason, Sec. 19.02(a)(2) may not support an attempted murder prosecution: A prosecution for an attempted offense will lie only if there is an intent to commit such attempted offense. The intent to cause serious bodily injury

**386**

relied on in *Baldwin* and *Garcia*, supra, is the intent to commit aggravated assault under Sec. 22.02(a)(1), supra, and if such intent accompanies an act that tends but fails to effect serious bodily injury, the offense is attempted aggravated assault, not attempted murder. If the act does cause serious bodily injury, the offense is aggravated assault, not attempted murder. Section 19.02(a)(1) is the only form of murder that requires an intent to murder, and since Sec. 15.01(a) requires an intent to commit the offense attempted, only Section 19.02(a)(1) will support attempted murder.

I concur in the holding that the indictment before us is not fundamentally defective for the reasons stated at the beginning of this opinion; I do not, however, agree that a legal conclusion would be sufficient to constitute an indictment, nor is the State relieved of the burden to prove a specific intent to kill, and to that purpose *Baldwin* and *Garcia*, supra, should be overruled.

ONION, Presiding Judge, dissenting.

Appellant argues that the indictment in this case was fundamentally defective as it failed to allege that the criminal attempt was made with the specific intent to commit the offense of capital murder. The indictment alleged in pertinent part that appellant:

> ". . . on or about May 23, 1975 did then and there unlawfully, knowingly and intentionally attempt to cause the death of Jerry Powell, by cutting and stabbing him with a knife and by shooting him with a gun, the said Jerry Powell being a peace officer acting in the lawful discharge of his official duties and the

said defendant then and there knew the said Jerry Powell was a peace officer acting in the discharge of his official duties . . . ."

"Criminal Attempt" is defined in V.T. C.A., Penal Code, § 15.01(a), which provides:

> "(a) A person commits an offense if, *with specific intent to commit an offense*, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." (Emphasis supplied.)

Under this statute the elements necessary to establish an offense are (1) a person, (2) with specific intent to commit an offense, (3) does an act (amounting to more than mere preparation, (4) that tends, but fails, to effect the commission of the offense intended.[1] See 1 Branch's Ann.P.C., 3rd ed., p. 634; *Green v. State*, 533 S.W.2d 769 (Tex.Cr.App.1976) (Dissenting Opinion at p. 771).

In *Baldwin v. State*, 538 S.W.2d 615 (Tex. Cr.App.1976), it was stated:

> "A person commits the offense of criminal attempt under V.T.C.A., Penal Code, § 15.01, if, first, with the specific intent to commit an offense he, second, does an act amounting to more than mere preparation that third, tends but fails to effect the commission of the offense intended."

Under the former Penal Code there were such specific attempt crimes as attempted abortion, attempted arson, attempted burglary, attempted rape, etc. The foregoing section (15.01) of the new Penal Code replaces all these type statutes and provides a

---

1. In 1 Branch's Texas Annotated Penal Statutes, 3rd ed., § 15.01 sets out a suggested form for an indictment for attempted murder as follows:

> "_____ did then and there attempt to cause the death of _____ by _____ (*shooting him with a gun*) having at the time the specific intent to commit the offense of murder." (Emphasis supplied.)

Morrison and Blackwell, New Texas Penal Code Forms, § 15.01, p. 5, sets forth the following:

> "(Commencement Form) A. B., on or about the _____ day of _____, 19___, in the coun-

ty and state aforesaid, did then and there with the specific intent to commit the offense of _____ (specify, such as 'burglary') did then and there attempt to _____ (set out the offense attempted as in a complaint such as 'did then and there, without the consent of C. D., the owner thereof, attempt to enter a building not then and there open to the public, with intent to commit theft'), said attempt amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."

general attempt statute under which the attempt to commit any offense is an offense. Under the new Penal Code scheme of things one of the elements necessary to establish an offense under the statute was a specific intent to commit an offense.

In the Practice Commentary to V.T.C.A., Penal Code, § 15.01, it is written in part:

"Before an attempt to commit an offense can be punished, the attempt itself must be defined as an offense, *Blanchette v. State*, 125 S.W. 26 (Cr.App.1910), and prior law contained numerous statutes that defined attempt and related crimes in terms of a specific object offense. For example, it was an offense to attempt to rape, Penal Code art. 1190; to assault with intent to rape, art. 1162, or murder, art. 1160, or rob, art. 1163; to attempt to escape, arts. 353b, 353d; to attempt arson, art. 1316, or wilful burning, art. 1326; and to attempt burglary, art. 1402. Section 15.01, on the other hand, is a general attempt statute that represents a new approach to the law of attempt in Texas: criminal attempt, as defined in this section, applies in conjunction with *all* of the offenses defined in the Penal Code. (It may not apply to offenses defined outside the code however; Section 1.03(b) provides that only Titles 1, 2, and 3 of the code apply to outside law and the penalties of outside law do not correspond to this code's classification system.) Under the general attempt statute, the elements necessary to establish criminal attempt and the penalties for its commission are uniform, while under prior law the elements of and penalties for an attempt varied depending on the particular offense attempted."

"  *   *   *

"Section 15.01 defines attempt in traditional terms, cf. *Lovett v. State*, 19 Tex. 174 (1856); Penal Code art. 1402. To constitute attempt, there must be an act, which must be performed with intent to commit a crime. (Although attempt purports to be available for all offenses, it is improbable that a person will perform an 'act' with intent to commit a crime of omission, see the definition of 'act' in Section 1.07, and impossible that a person 'intend' to commit a crime involving recklessness or criminal negligence.) An act and intent alone, however, will not suffice for attempt. The actor's conduct must progress beyond 'mere preparation' and must tend to effect commission of the crime.

"  *   *   * "

It is clear from what has been said above that under the approach adopted by the new Penal Code the elements necessary to establish criminal attempt under the general attempt statute are uniform, and that one of the new elements is the specific intent to commit an offense.

Citing cases decided under former codes, the majority holds that the allegation of "attempt" is sufficient to allege "a specific intent to commit" an alleged crime. It is observed that in *Green v. State*, supra, it was held that an indictment under the general attempt statute which failed to allege the act constituting the attempt was not fundamentally defective, overruling *Fonville v. State*, 62 S.W. 573 (Tex.Cr.App. 1901). In light of today's majority holding and the decision in *Green*, the mere allegation of "attempt" as a conclusion in an indictment for the attempted capital murder of a peace officer is sufficient to allege "the specific intent to commit [the offense of] capital murder," a necessary element of the general attempt statute, and further such indictment need not set forth what the defendant did in the attempt to commit capital murder without the same being fundamentally defective.

For the failure of the indictment to allege that the appellant had the specific intent to commit capital murder, I would find the indictment fundamentally defective.

ROBERTS, PHILLIPS and DALLY, JJ., join in this dissent.