## GEORGE WATTS v. THE STATE.

*No. 3973.    Decided December 16.*

1.  **Assault with Intent to Murder— Opinion Evidence —Intent.** —Where, on trial for assault with intent to murder, the defendant sought to prove by a witness that it was "his impression at the time, from what he saw, that the pistol was fired accidentally," and this testimony was objected to by the prosecution and rejected on the ground that it would be stating the opinion of the witness, *held*, there was no error, and that such testimony was immaterial, even had it been admissible, in view of the other facts in the case.

2.  **Assault with Intent to Murder—Specific Intent, when Accomplished— Abandonment.**—If a party intending to commit murder uses a deadly weapon in such a manner as that his intent is apparent, or may be fairly inferred from his acts, he can not, by abandoning any further attempt at violence, lessen the effect of his previous acts and intentions, inasmuch as they have already become accomplished facts. His crime has already been committed, and he can not abandon what he has already done.

3.  **Same—Case Approved.**—The ruling of this court on the above subject, as announced in the case of Wood v. The State, 27 Texas Court of Appeals, 393, quoted with approval.

4.  **Same— Intention — Consummation of.** — In assault with intent to murder, while the specific intent is the gist of the offense, still, so long as the crime remains in mere intention it is not punishable, but if an attempt is made to execute the intention which falls short of its consummation, the crime is committed, because the act and intent coalesce, and the intent has passed into action, although that action was futile.

5.  **Same—Newly Discovered Evidence.**—Where one of the grounds of the motion for new trial was newly discovered evidence, by which it was proposed to be shown that the alleged injured party after the shooting admitted that defendant did not shoot at him,. but that the pistol was accidentally discharged, *held*, that the drawing of the pistol, accompanied by words and acts showing an intent to shoot, the crime could not be affected by a subsequent abandonment, and that such proposed evidence would be immaterial

APPEAL from the District Court of Hill.   Tried below before Hon. J. M. Hall.

This is an appeal from a judgment of conviction for assault with intent to murder, wherein the punishment was assessed at two years confinement in the penitentiary.   The opinion of the court states all the essential facts adduced in evidence on the trial.

*Smith & Wear* and *McKinnon & Carlton*, for appellant. —1.   The court erred in refusing to permit defendant's witness Fain to testify, that it was his impression that defendant's pistol was fired accidentally, judging from the position in which the pistol was held when it was fired, and the relative position of the parties.   Powers v. The State, 23 Texas Ct. App., 43; Irvine v. The State, 26 Texas Ct. App., 37; Whart. on Ev., 2 ed., secs. 509, 510, 511.

2.   The court erred in failing to charge on the law of aggravated assault.   The facts were such as would have raised the question of ade-

quate cause if there had been a killing, and this being the case it was imperative on the court to charge aggravated assault. The defendant is a negro. He had by the alleged assaulted party been charged with saying that a young white lady had lied. Immediately after hearing this, he met with the party who had made the charge, demanded of him to go and retract it, which is refused. Defendant was frightened at what he had heard, and is in a frightened and excited condition when he meets the party who had done him the injury. The words and the conduct of the alleged assaulted party amount to more than insulting words. By the words and acts of the party, such a condition of things is brought about as jeopard the life of defendant; and this being the case, if it be true that defendant intentionally discharged the pistol, it was done under such circumstances as rendered him incapable of cool reflection; or at least the facts raised this issue. Wadlington v. The State, 19 Texas Ct. App., 272; Williams v. The State, 15 Texas Ct. App., 618; Neyland v. The State, 13 Texas Ct. App., 546.

3. The charge of the court on manslaughter, in the absence of any charge on aggravated assault, was error and was calculated to mislead and prejudice the jury. The charge attempts to tell the jury under what circumstances a killing would be reduced from murder to manslaughter, without in any way applying this part of the charge to the facts of defendant's case. The charge of manslaughter could have been pertinent only in connection with a charge on aggravated assault. Hodges v. The State, 3 Texas Ct. App., 470.

4. The court erred in failing to charge the jury, that unless they believed the pistol as used was a deadly weapon, and from the manner of its use was calculated to produce death, they could only find defendant guilty of an assault. [No authorities cited.—REPORTER.]

5. The court erred in overruling defendant's motion for a new trial, because the verdict was contrary to the law and evidence. Black v. The State, 8 Texas Ct. App., 329; Jobe v. The State, 1 Texas Ct. App., 183; Ewing v. The State, 4 Texas Ct. App., 417.

On the ground of newly discovered evidence: Estrada v. The State, 29 Texas Ct. App., 169; Brown v. The State, 13 Texas Ct. App., 59; Mann v. The State, 44 Texas, 642.

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of assault with intent to murder, and given a term of two years in the penitentiary.

The evidence discloses, that some days prior to the difficulty between appellant and the assaulted party, Will Whitfield, appellant stated to some parties that Whitfield "had been telling lies on him, and he was going to kill him or make him take them back."

Dick Hart testified, that "some days before this difficulty defendant came to my place of business. Will Whitfield and Tom Ingraham were in the house. I asked defendant if he associated with such fellows as them, naming Whitfield and Ingraham; whereupon defendant replied he associated with Tom Ingraham, but that he would not associate with Whitfield; that Whitfield had stolen two bits from him. Whitfield replied that he hadn't stolen two bits, and could prove that he had paid the two bits as he had been directed, and could prove it by the person to whom he paid it. Whereupon defendant declared that anybody who said so was a liar." Tom Ingraham's testimony was to the same effect.

Whitfield testified, that on the day of the difficulty appellant met him "on the streets in Hillsboro, near J. C. George's family grocery store, in front of the store, and defendant said to me, 'You have got to take back what you have been saying about me.' I asked him what I had been saying about him, when defendant said, 'I see you are not going to take it back, and I will kill you.' I then saw him put his hand in his pocket, pull out his pistol, and I turned to run. Just as I turned the pistol fired, and the ball struck me on the rubber of my gaiter shoe. * * * I thought it struck me on my shoe. I then ran in J. C. George's store, and when I came out defendant was under arrest. * * * I never told Miss Sallie West that George Watts said she lied, but I told her that George Watts said that anybody who said I had paid over two bits was a liar."

Cliff Garrison saw the difficulty, and was about forty feet from the parties at the time. He testified, that he "saw defendant shoot at Whitfield, who was running from him. I heard some one halloo about the time the pistol fired. Whitfield was about four or five feet from defendant when he shot. * * * The pistol was not raised higher than defendant's waist, and held a little forward, and was not in position a pistol usually is when shot." He could not say that the pistol was pointing at Whitfield when it was discharged.

W. B. Johnson, city marshal, saw the difficulty, and arrested defendant. When the shooting occurred he went at once to the place, and asked who was shot. "Somebody said it was Will Whitfield. George Watts said, 'Where is he? Where is he?' I asked, 'Who did the shooting?' The defendant said, 'I did;' and handed me his pistol, and told me to be careful, that it was cocked. I arrested the defendant immediately, and his pistol was cocked when I arrested him." There were two or three loaded chambers in the cylinder of the pistol when taken from defendant.

Fain, for defendant, testified: "I saw the defendant when he pulled out his pistol. It was in his left hand when he pulled it out. He did not raise it up in a presented position, but it remained in his left hand, by his side, with his hand slightly forward. From where I was I could

see the barrel of the pistol. The pistol was in his hand, and it pointed in an angle toward the ground; not directly toward the ground, but in an angle toward the ground. The pistol was held in the same position for at least two seconds, and when it fired it was in this position, having remained in this position to the time it fired. Whitfield was four or five steps from defendant when the pistol fired, and had turned to run. The pistol when it fired was not pointing in the direction of Whitfield, but was pointing in a direction about eight feet to the left of the direction Whitfield was running. I saw the pistol ball hit the ground. It hit the ground about fifteen feet from defendant, and eight feet to the left of the way Whitfield was going. Immediately after the shot was fired I went to where I saw the ball hit, and found the ball which was shot out of the pistol."

Defendant testified, substantially, that he went in search of Whitfield for the purpose of forcing him to go with him to see Captain West with reference to the remark which Whitfield had made to Miss West, calling in question her veracity. Whitfield refused to go then, but said he would go that evening. Defendant informed him that he must go then, and, upon being refused compliance with the demand, he "pulled out his pistol for the purpose of making him go." He testified, further, that he "did not point toward Whitfield, and did not shoot at him. * * * I was very excited, and on this account I let the pistol go off accidentally. * * * I did not intend to shoot Whitfield. I only intended to frighten him into going with me."

This is the substance of the evidence adduced on the trial of the cause.

By the witness Fain, defendant further sought to prove that it was "his impression at the time, from what he saw, that the pistol was fired accidentally." On objection by the prosecution, that this would be stating the witness' opinion, this offered testimony was rejected.

Looking to the same purpose of proving the intent of defendant, the affidavit of T. H. Dixon was appended to the motion for a new trial, in which it was sworn that subsequent to the shooting the assaulted party told him that defendant did not shoot at him. This was alleged to be newly discovered testimony.

By two other witnesses, whose testimony was also alleged to be newly discovered, defendant avers that he can prove that subsequent to the conviction in this case they overheard Whitfield and another party discussing the effect of defendant's shot, and in which conversation the party speaking to Whitfield said that the place on the shoe which appeared to have been shot had been by him, a few days before the alleged shooting, cut with a knife; that he (the said party) cut said shoe of Whitfield with a knife, in order to enable him to get it on his foot. And he told Whitfield the shoe was cut, and not shot. To this Whit-

field replied, that he "could not say that the ball from the pistol had struck his foot, but that he was running, and it may have been a gravel or rock that struck his foot." The court overruled the motion for a new trial on both grounds.

The opinion of the witness Fain, as well as the newly discovered evidence, taken most strongly for defendant, would tend to show the intent with which the assault was committed. At least, it was offered for this purpose.

In order to constitute assault with intent to murder, there must be a specific intent to murder; and if not, then that offense is not made out. This intent, being an essential ingredient of that crime, must be proved to the satisfaction of the jury. Willson's Crim. Stats., secs. 857–859; Wood v. The State, 27 Texas Ct. App., 393; McCullough v. The State, 24 Texas Ct. App., 128; Moore v. The State, 26 Texas Ct. App., 322.

The test of this offense is thus stated in the Penal Code: "Whenever it appears, upon a trial for an assault with intent to murder, that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent." Penal Code, art. 502.

The Supreme Court held in Yanez v. The State, 20 Texas, 656: If the assault was voluntary, committed with deliberate design, and with an instrument capable of producing death, in such manner as evidences an intention to take life, and there are no extenuating circumstances, it is an assault to murder. Wood v. The State, 27 Texas Ct. App., 393. This court quotes this approvingly in Wood's case, Id., and further said, quoting from Bishop on Criminal Law: "If a man undertakes to do a particular wrong of the indictable sort, and does some act toward it, but fails to complete what he meant, his evil intent and act together constitute * * * a common law crime, provided that the act is not too trivial and small for the law's notice; for the intent is sufficient, and the adequacy of the act is the only further object of inquiry. Therefore an attempt is an intent to do a particular thing which the law, common or statutory, has declared to be a crime, coupled with an act toward the doing sufficient in magnitude and proximity to the fact intended to be taken cognizance of by law, that does not concern itself with things trivial and small; or, more briefly, an attempt is an intent to do a particular criminal thing, with an act toward it falling short of the thing intended." 1 Bish. Crim. Law, secs 727, 728; Wood v. The State, 27 Texas Ct. App., 393; Trevinio v. The State, 27 Texas Ct. App., 372.

"It is a probable consequence of the use of a deadly weapon in an assault and battery committed by one person on another that the death of the party assaulted may ensue; and hence proof of such use is *prima facie* evidence of an intent to kill, which must prevail unless overcome

by other proof in the cause. If a party intending to commit murder used a deadly weapon in such a manner as that his intent is apparent, or may be fairly inferred from the acts, he can not, by abandoning any further attempt at violence, lessen the effect of his previous acts and intentions, because they have already become accomplished facts. His crime has already been committed; he can not abandon what he has already done." Wood v. The State, 27 Texas Ct. App., 393. "So long as the crime remains in mere intention, it is not punishable; but if an attempt is made to execute the intention which falls short of its consummation, a crime is committed. Here an act and intent coalesce; the intent has passed into action, although that action was futile." 9 Crim. Law Mag., 162; Mignonette case, 6 Crim. Law Mag., 264.

The important facts relied upon by defendant in this case to show that he was not guilty of the assault to murder consist in the accidental discharge of his pistol and his failure to shoot the second time. The "impression" or opinion of Fain, as well as the alleged newly discovered testimony, relate alone to this question, and went to his intent only, because the defendant himself testified fully to the assault, and all the evidence is harmonious upon this phase of the case, showing that the assault was committed.

Now, if the assault was committed—and this is not denied—then the subsequent abandonment of the difficulty did not relieve of the crime committed prior to such abandonment, for that offense was then complete; nor could the failure of the defendant to repeat his shot at his fleeing foe relieve of the guilt attaching to the consequences of the prior shot or preceding assault. If when the defendant approached Whitfield, and coupled his demand for retraction with threats of taking his life if he did not retract, he drew his pistol and fired, the assault was complete. It would be wholly immaterial that it was discharged accidentally, because the accidental firing or discharge of the pistol could not affect the purpose and intent of the defendant so as to relieve him of the consequence of his act. To so hold would be to say that the attempt and purpose of a party could be avoided because of his failure to accomplish that purpose. Such a position is antagonistic to every principle of law and reason.

Admit that the pistol was accidentally discharged, and that Whitfield was mistaken in supposing the bullet struck his shoe as he was running away from defendant; this would not affect the intent with which the assault was made to the extent of mitigating such assault, nor would it indicate that the intent to murder was absent from the defendant's mind at the time of the assault. It would rather tend to prove that intent than otherwise. It would have been more in accord with a want of a murderous intent had he fired the pistol to one side with deliberation, because there might have then been more plausibility attached to the theory that he was seeking to frighten Whitfield.

The court did not err in rejecting the evidence of Fain under the facts of this case, nor did he err in refusing the new trial on the ground of newly discovered testimony.

Finding no reversible errors in the record, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.