**Clarence Earl DOTY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 56429.

Court of Criminal Appeals of Texas, Panel No. 3.

June 27, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

---

Kerry P. Fitzgerald, Dallas, for appellant; Jim Vollers, Austin, of counsel.

Henry M. Wade, Dist. Atty., John H. Hagler, Gerald Banks and James K. Johnson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

Following a conviction for attempted capital murder where a jury assessed punishment at twenty-eight years confinement, appellant brings forward nineteen grounds of error.

In his initial ground of error, appellant challenges the sufficiency of the indictment to allege the offense of attempted capital murder. Appellant argues the indictment is fundamentally defective because it alleges only criminal solicitation, omitting the act of attempt: an act amounting to more than mere preparation, but failing to effect the commission of the intended offense. V.T.C.A. Penal Code, Sec. 15.01.

The indictment reads as follows:

". . . did unlawfully, attempt to cause the death of Linda Faye Doty, in that the said defendant *was employing for remuneration* and promise of remuneration Bobby L. Curtis by knowingly and intentionally offering one thousand five hundred dollars ($1,500.00) current money of the United States of America to Bobby L. Curtis *paid and promised to be paid* to kill Linda Faye Doty by shooting her with a sawed-off shotgun . . ." (Emphasis added)

Clearly, this is a "murder for hire" indictment; an indictment for attempted capital murder under the "employment" provision of V.T.C.A. Penal Code, Sec. 19.03(a)(3). Murder for remuneration under Sec. 19.-03(a)(3) involves, at a minimum, three individuals: (1) principal, (2) agent, and (3) victim. The interaction of these individuals is very simple. The principal hires the agent to kill the victim. In such a relationship, the *only* act required of the principal is the hiring of the agent. Once the employment "contract" is made and consideration passes, there is more than mere preparation. In fact, once such a contract of employment exists, the principal has completed his role and may be guilty of capital murder

or attempted capital murder, depending on the success of his agent.

◼ Therefore, if the language of the indictment indicates or alleges the existence of this "employment contract," it sufficiently alleges an act by the principal—appellant going beyond mere preparation. Such an allegation must, however, be more than a promise to pay in the future. In *Hobbs v. State*, 548 S.W.2d 884 (Tex.Cr.App.1977), we held the following language insufficient:

"That Joyce Hobbs on or about the 25th day of July, A.D. 1975, . . . did then and there attempt knowingly to cause the death of James Leon Hobbs, by promising remuneration to wit: promising to pay Virgil McCuller $100.00 to kill the said James Leon Hobbs by shooting him with a gun."

While a future promise to pay in exchange for the murder of an individual is within V.T.C.A. Penal Code, Sec. 19.03(a)(3), the *Hobbs* indictment does not allege any acts by the employer, other than preparation to pay in the future. Such an allegation is not a criminal attempt. V.T.C.A. Penal Code, Sec. 15.01.

◼ In appellant's case, the indictment language alleged that appellant " 'was employing for remuneration' Bobby L. Curtis," which indicates a present and existing employment agreement beyond a future promise to pay. This language indicates that appellant had acted in some manner to create a contract to have the victim killed. Reading further, the indictment alleges the consideration for this contract in both the past and future tenses: ". . . paid and promised to be paid . . ." Thus, the indictment alleges a contract of employment whereby the victim was to be killed and alleges payment by appellant as an act beyond mere preparation. Therefore, while not a model indictment, these allegations satisfy V.T.C.A. Penal Code, Sec. 15.01 and Sec. 19.03(a)(3) and sufficiently allege attempted capital murder.

◼ Having determined the indictment sufficient, we turn to the dispositive issue which is contained in appellant's ground of error number four. The issue therein presented is the sufficiency of the evidence to support the conviction for attempted capital murder. Appellant urges that there is a variance between the evidence adduced and the allegations in the indictment. We agree.

The indictment alleges as the act beyond preparation, payment of money from appellant to an undercover officer. The State then was obliged to prove payment. However, the testimony of the undercover police officer shows no payment was made. At one point, the officer testified as follows:

"Q. And you testified earlier that he had a wad of money on him?

A. Yes, sir, that's correct.

Q. Money far in excess of a thousand dollars, didn't he?

A. Yes, sir.

Q. And he didn't give you one cent?

A. No, sir, he did not.

Q. He didn't give you a sawed off shotgun did he?

A. No, sir, he did not."

At another point, the testimony was:

"Q. . . . he didn't do anything about giving you any money out front?

A. No, sir, he didn't give me any.

Q. Not a cent, did he?

A. No, sir."

The State argues that appellant provided a photograph of the victim and certain addresses, and these are acts beyond preparation. The remuneration aspect of murder for hire is an essential element and must be proved. Here, the State alleged payment as the act of criminal attempt and thus imposed upon itself the burden to establish payment. Having failed to do so, the evidence adduced is insufficient to support the allegations in the indictment. *Commons v. State*, 575 S.W.2d 518 (Tex.Cr.App.1979); *Armstrong v. State*, 573 S.W.2d 813 (Tex.Cr.App.1978).

The judgment is reversed and prosecution ordered dismissed. *Burks v. U. S.*, 437 U.S.

1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

CLINTON, Judge, concurring.

The general rule is that an indictment which uses the same or similar language of the statutory definition of the offense is basically sound, Art. 21.17, V.A.C.C.P., but the sources cited in note 1 reflect different readings of pertinent articles and do not present a common pattern.[1] Faced with that lack of consistency the scrivener of the indictment before us apparently opted for Texas Annotated Penal Statutes, Branch's 3d Ed.[2] Thus, in Vol. 1 at page 634 the suggestion for attempted murder is:

"_____ did then and there attempt to cause the death of _____ by _____ (shooting him with a gun,) having at the time the specific intent to commit the offense of murder."

and in Vol. 2 at page 17, the form presented for capital murder by hiring is:

"_____ did then and there _____ . . cause the death of _____ employing for remuneration and promise of remuneration, to-wit: (the sum of $500 paid and promised to be paid), _____ (name of killer) _____ to kill said _____ (de-

ceased) _____ by _____ (method used, e. g., shooting him with a gun) _____."

Tracing the instant indictment to its sources enables us to discern that its drafter was aware of the need to allege an act that amounts to more than mere preparation that tends but fails to effect commission of the offense of hiring a murderer and, further, precisely the act thought to meet that requirement, to-wit:

"by knowingly and intentionally offering one thousand five hundred dollars ($1,500.00) current money of the United States of America to Bobby L. Curtis.
. . . "

Whether the handiwork of the draftsman is defective is the issue so dividing the Court that three opinions are produced.

As I understand the respective positions of my Brothers, they differ over the nature and quality and, certainly, the order of the act that is more than preparation.[3] Neither addresses the allegation I regard as that intended by the maker of the indictment to be the act beyond mere preparation.

That the indictment sufficiently alleges a specific intent on the part of appellant to cause the death of his intended victim by using the word "attempt" is supported by what was then a tenuous majority view of the Court.[4] Moreover, all essential ele-

1. One who resorts to form books for guidance in drawing an indictment charging the offense of criminal attempt to hire for murder is in for a mind boggling experience. See and compare 7 *Texas Practice* 29 and 34, Morrison & Blackwell, Criminal Forms Annotated (8th Ed.1977) §§ 2.01 and 4.06; 1 *Texas Annotated Penal Statutes*, Branch's 3d Ed. (1974) 634, § 15.01 and 2 *Texas Annotated Penal Statutes*, Branch's 3d Ed. (1974) 17, § 19.03; *McClung, Jury Charges for Texas Criminal Practice* (Rev. Ed.1979) 286 and 293–294. Compare also *Texas Jury Pattern Criminal Charges* (1975) 91, CPJC 15.01 and 127, CPJC 19.03(a)(3); 8 *Texas Practice* 246 and 267, Morrison & Blackwell, Criminal Forms Annotated (8th Ed.1977) §§ 91.01 and 93.06.

2. Influenced, perhaps, by the acknowledgement in its preface that the work was prepared with the assistance of the Texas District and County Attorneys Association.

3. The cases of attempted capital murder of a peace officer are really not all that helpful here. Usually each is a "one on one" situation, aris-

ing extemporaneously, in which the accused intentionally or knowingly and personally engaged in some act designed to kill, but failed. Of course, in neither attempt situation is there an actual killing. The problem, then, is at what point did an effort that failed in its objective amount to an attempt. In the peace officer cases the solution is easy because immediately and contemporaneously there exists every factor necessary for capital murder—except death. In the hiring cases, though, the problem solver must decide when all requisite elements—excluding death—coalesce into an attempt to cause death. Given an addition of at least one other essential party and quite different policy considerations in the latter situation, solutions to the former do not necessarily control.

4. See *Dovalina v. State*, 564 S.W.2d 378 (Tex. Cr.App.1978) and *Telfair v. State*, 565 S.W.2d 522 (Tex.Cr.App.1978). If the 1978 alignment still holds today, my vote will convert what was then minority expression to a majority holding now.

ments of the object capital murder offense are there. The question, then, is reduced to whether an attempt to commit capital murder by hiring may occur before an agreement to kill is struck or is in reaching the agreement or must await the agreement and then be a "tending" act of the hired killer. The pleader in this case obviously advanced the theory that attempt lay in the accused's offering $1,500 in current money to the putative killer, without particularizing at what point the money was offered or, indeed, the manner in which the offer of money was made.

This particular object offense is unique in that it contemplates that consummation of the transaction by death of the intended victim is done by someone paid by the accused to do it. An accused who desires the death of another but, declining to do the deed personally, hires a third party to kill need not take any action beyond engaging the services of the killer. If the killer executes the contract both parties to it may be guilty of capital murder. But if the killer fails to execute the contract, does the culpability of the procuring accused depend on the reason for the failure? I think not. The accused, in parlance of the initiated, has "let a contract," and penal liability for execution of that contract by another attaches to the accused because the killing is the natural consequence of what the accused generated and put in operation. That is why, it seems to me, in this particular situation the most critical element of an attempt is the intent to cause death by hiring, and the nature and quality of the "tending" act are only relatively significant.

It must be remembered that criminal attempt is an inchoate offense.[5] As the practice commentary following V.T.C.A. Penal Code, § 15.01 observes, since inchoate offenses "presuppose an intent to commit another offense and the actor, by hypothesis, ignores the sanction for the object offense, they provide no significant deterrence . . (but they do) . . . perform other legitimate penological functions in permitting punishment of those who demonstrate a disposition toward criminality before they do any real harm . . ." Further we are assured, and have independently confirmed, that § 15.01 defines the offense of criminal attempt "in traditional terms." See generally *United States v. Mandujano,* 499 F.2d 370, 372–379 (5 Cir. 1974) in which Rives, C. J. collects a host of authorities and distills their holdings down to two basic ingredients of criminal attempt;[6] 22 C.J.S. p. 226, Criminal Law § 74, Attempts; and, for early statements of the terms in Texas, *Wood v. State,* 27 Tex.App. 393, 11 S.W. 449 (Ct.App.1889)[7] and *Watts v. State,* 30 Tex.App. 533, 17 S.W. 1092 (1891).[8]

---

**5.** Inchoate means "imperfect; partial; unfinished; begun, but not completed . . .," Black's Law Dictionary, Revised Fourth Edition, 904.

**6.** "First, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting. * * * Second, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime. A substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent." Note, however, that our State requires only *an* act that "*tends*" to effect commission of the object offense, not that it be *substantial.*

**7.** Quoting approvingly from 1 Bishop Criminal Law §§ 727, 728:
"If a man undertakes to do a particular wrong of the indictable sort, and does some act towards it, but fails to complete what he meant, his evil intent and act together consti-

tute . . . a common-law crime, provided that act is not too trivial and small for the law's notice; for the intent is sufficient, and the adequacy of the act is the only further object of inquiry. Therefore an attempt is an intent to do a particular thing which the law, common or statutory, has declared to be a crime, coupled with an act towards the doing sufficient in magnitude and proximity to the fact intended to be taken cognizance of by the law, that does not concern itself with things trivial and small; or, more briefly, an attempt is an intent to do a particular criminal thing, with act towards it falling short of the thing intended."

**8.** Quoting approvingly from 9 Crim.Law.Mag. 162:
"So long as the crime remains in mere intention, it is not punishable; but, if an attempt is made to execute the intention which falls short of its consummation, a crime is committed. Here an act and intent coalesce; the

Because the essential evil in this category of capital murder is remuneration, either paid or promised, an accused may be guilty of criminal solicitation if, with intent that someone be killed by another for remuneration, that accused requests, commands or attempts to induce the other person to kill with a promise to pay for the deed; the offense is complete without any agreement by the other person to kill. For the same reason, an accused may be guilty of criminal conspiracy if, on the same basis, an agreement is reached and the other party— or, in another context, the accused—performs just one otherwise innocent overt act in pursuance of the agreement.[9] Neither offense demands that the second party engage in a single act of criminal misconduct in order that the initiating solicitor or conspirator be charged with committing the inchoate offense and, if found guilty, be punished as a first degree felon. How is it, then, that the offense of attempted capital murder by hiring requires an agreement to kill followed by criminal misconduct that fails its objective before the originator of the scheme may be charged with that inchoate offense and, if found guilty, be punished as first degree felon? The fundamental vice in each offense is precisely the same: the specific intent in the mind of the accused that another be killed by a hired gun. Only the manner by which that intent manifests itself is somewhat different: an attempt, a solicitation or a conspiracy. Money is, to paraphrase, the root of each manifestation of evil—just the mechanics of moving it about vary. In this light actually offering hard cash for the undertaking seems more definitive than an unsecured promise to pay it in the future.

Accordingly, I would hold that the indictment in this case, though awkwardly worded, by its "offering" clause does allege an act amounting to more than mere preparation that tends to effect commission of hiring to murder. When, in relation to other

intent has passed into action, although that action was futile."

9. See *United States v. Jackson*, 435 F.Supp. 434, 439 (E.D.N.Y.1976): An overt act may

events, and the manner in which the offer was made are, in my view, evidentiary matters that need not be specified in an indictment.

For these reasons I conclude that the indictment is not defective and concur in overruling grounds of error contending otherwise.

DALLY, Judge, dissenting.

I cannot agree that the indictment is sufficient; since the indictment fails to allege an act which was done to effect the intended offense of murder, it does not allege the offense of attempted capital murder.

The 1974 Penal Code defines and provides a penalty for the separate crime of criminal attempt as follows:

"V.T.C.A. Penal Code, Sec. 15.01, Criminal Attempt

"(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

"(b) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

"(c) An offense under this section is one category lower than the offense attempted, and if the offense attempted is a felony of the third degree, the offense is a Class A misdemeanor."

The offense of attempted capital murder requires that an act be committed, which amounts to more than mere preparation, to effect the intended offense of murder. Therefore, to allege the offense of attempted capital murder it is necessary to allege that a defendant having a specific intent to commit the offense of capital murder *did some act,* which amounts to more than mere preparation, to effect the commission of the intended offense of murder.

further a conspiracy regardless of its importance to the overall scheme whereas an attempt involves a "manifestation of dangerousness."

The indictment in the instant case alleges that the appellant:

". . . did unlawfully, attempt to cause the death of Linda Faye Doty, in that the said defendant was employing for remuneration and promise of remuneration Bobby L. Curtis by knowingly and intentionally offering one thousand five hundred dollars ($1,500.00) current money of the United States of America to Bobby L. Curtis paid and promised to be paid to kill Linda Faye Doty by shooting her with a sawed off shotgun . ."

The allegation in the indictment concerning the employment of Curtis to shoot Linda Faye Doty is an allegation necessary to raise the offense from murder to capital murder; V.T.C.A. Penal Code, Sec. 19.-03(a)(3); [1] it is not an allegation of an act done to effect the intended offense of murder. V.T.C.A. Penal Code, Sec. 15.01(a).

In *Colman v. State,* 542 S.W.2d 144 (Tex. Cr.App.1976) an indictment for the offense of attempted capital murder was held sufficient. It alleged the defendant:

". . . then and there, with the specific intent to commit the offense of capital murder, attempt to cause the death of Terry L. Graves, hereinafter called complainant, by shooting the said Terry L. Graves with a pistol and the said complainant was a peace officer then and there acting in the lawful discharge of an official duty to-wit: attempting to arrest said defendant and the said defendant then and there knew the said complainant to be a peace officer."

In *Dovalina v. State,* 564 S.W.2d 378 (Tex.Cr.App.1978), with four judges dissenting because they considered the indictment insufficient for a different reason than that now in issue, an indictment was held sufficient which alleged that the defendant:

". . . On or about May 23, 1975, did then and there unlawfully, knowingly and intentionally attempt to cause the death of Jerry Powell by cutting and stabbing him with a knife and by shooting him with a gun, the said Jerry Powell being a peace officer acting in the lawful discharge of his official duties and the said Defendant then and there knew the said Jerry Powell was a peace officer acting in the discharge of his official duty."

In *Pitts v. State,* 569 S.W.2d 898 (Tex.Cr. App.1978), an indictment for the offense of attempted capital murder was held sufficient when it alleged that the defendant:

". . . did then and there unlawfully attempt to intentionally and knowingly cause the death of S. L. Serres, by shooting him with a gun, the said S. L. Serres being a peace officer acting in the lawful discharge of an official duty and the said Larry Charles Pitts then and there knew the said Complainant was a peace officer."

While the constituent element of capital murder alleged in the instant case was employment of another for remuneration, V.T. C.A. Penal Code, Sec. 19.03(a)(3), the constituent element of capital murder alleged in *Colman v. State,* supra, *Dovalina v. State,* supra, and *Pitts v. State,* supra, was that the defendant knew the victim was a peace officer in the discharge of his lawful duties. V.T.C.A. Penal Code, Sec. 19.-03(a)(1). In *Colman v. State,* supra, and *Pitts v. State,* supra, the act which it is alleged the appellant did in the commission of the offense of criminal attempt was shooting the victim with a gun. V.T.C.A. Penal Code, Sec. 15.01(a). In *Dovalina v.*

---

1. V.T.C.A. Penal Code provides:

"Sec. 19.02. Murder.
"(a) A person commits an offense if he:
"(1) intentionally or knowingly causes the death of an individual; . . .
"Sec. 19.03. Capital Murder.
"(a) A person commits an offense if he commits murder as defined under Sec. 19.02(a)(1) of this code and: .

"(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman;
"(2) . . .
"(3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration."

*State,* supra, the act alleged to effect the offense of criminal attempt was by cutting the victim with a knife and shooting him with a gun. V.T.C.A. Penal Code, Sec. 15.-01(a). In the instant case there is no allegation of an act which the appellant did to effect the intended offense of murder.

The State argues that since the indictment in the instant case alleges that the appellant "was employing" Bobby L. Curtis for the purpose of committing capital murder it is sufficient. The State then attempts to distinguish this indictment from the indictment held to be insufficient in *Hobbs v. State,* 548 S.W.2d 884 (Tex.Cr. App.1977). The indictment in that case alleged:

> "That Joyce Hobbs on or about the 25th day of July, A.D., 1975, . . . did then and there attempt knowingly to cause the death of James Leon Hobbs, by promising remuneration to wit: promising to pay Virgil McCuller $100 to kill the said James Leon Hobbs by shooting him with a gun."

I fail to see a distinguishing difference between "was employing" and "promising to pay." Both indictments fail to allege an act to effect the intended offense of capital murder. This indictment alleges no act which was committed to accomplish the murder of Linda Faye Doty.

The point may be better illustrated by an example. Even if there had been an additional allegation that either the appellant or Curtis had obtained a gun with which to kill Linda Faye Doty, the allegations would not have been sufficient, because obtaining the gun would show mere preparation to commit the intended offense of murder.

The majority analysis of V.T.C.A. Penal Code, Sec. 19.03(a)(3) is *too* "very simple." The employer in a murder for hire is not guilty of the offense of attempted murder until there is an attempt to kill the intended victim.

If the employer for a hired killing pays the employee and no other act is done to effect the intended murder, the employer would be guilty of solicitation to commit capital murder. V.T.C.A. Penal Code, Sec. 15.03(a).[2] If either the employer or employee obtains a gun to kill the intended victim, this would be an overt act and both employer and employee would be guilty of a conspiracy to commit capital murder. V.T.C.A. Penal Code, Sec. 15.02(a).[3] If the employee hired to kill the victim commits an act such as shooting at the intended victim, both the employer and employee would be guilty of attempted capital murder. V.T.C.A. Penal Code, Sec. 15.01.

Even if the indictment in this case be interpreted to mean that the appellant had already paid Curtis to kill Linda Faye Doty, that is only an act that increases the seriousness of the offense from murder to capital murder. The act of paying the money is not an attempt to kill the victim. The majority is clearly wrong in saying that: "In fact, once such a contract of employment exists, the principal has completed his role and may be guilty of capital murder or attempted capital murder, depending on the success of his agent." If the employee merely accepts the money and has not or does not do any other act, the employer is clearly only guilty of solicitation of capital murder; not attempted murder.

We should hold that the indictment does not properly allege the offense of attempted capital murder. I dissent.

---

**2.** "Criminal Solicitation.

"(a) A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commends, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor he believes them to be, would constitute the felony or make the other a party to its commission."

**3.** "Criminal Conspiracy.

"(a) A person commits criminal conspiracy if, with intent that a felony be committed:
"(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
"(2) he or one or more of them performs an overt act in pursuance of the agreement."