UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-41482
_____

BETTY LOU BEETS,

Petitioner-Appellant,

v.

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee,

_____

Appeals from the United States District Court
for the Eastern District of Texas
_____

June 28, 1999

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In 1985, Betty Lou Beets was convicted of the murder of
her fifth husband, Jimmy Don Beets. A Texas jury sentenced her to
death. Her conviction and sentence were affirmed on appeal. See
Beets v. Texas, 767 S.W.2d 711, 730-48 (Tex. Crim. App. 1988)
(majority op. on reh'g). Following the unsuccessful prosecution of
a state writ, Beets sought federal habeas relief from her
conviction. This court, sitting en banc, rejected several of the
issues she raised. See Beets v. Scott, 65 F.3d 1258 (5th Cir.
1995), cert. denied, 517 U.S. 1157, 116 S. Ct. 1547 (1996). The
federal district court dismissed Beets's remaining habeas claims,
and she has returned to this court alleging another constitutional
infirmity, this time in the application of Texas's murder-for-
remuneration statute. See Tex. Penal Code § 19.03(a)(3). We agree

with the district court that the statute was properly applied here and, thus, affirm.

## I.

Jimmy Don Beets disappeared on August 6, 1983; he was presumed drowned. Following his disappearance, Beets sought to recover benefits from Jimmy Don's retirement plan and several life insurance policies. Before she could obtain the proceeds, however, Jimmy Don's body was found buried in Beets's yard – along with the body of Beets's fourth husband. Texas authorities charged Beets with murder for remuneration in violation of Tex. Penal Code § 19.03(a)(3) ("Section 19.03(a)(3)").

At trial, Beets contested, <u>inter</u> <u>alia</u>, the remuneration element of the State's charge. Beets argued that Section 19.03(a)(3) only governs murders-for-hire. The State responded that Beets killed her husband in order to recover the benefits from his retirement plan, the proceeds of his life insurance policies, and his estate. Evidence showed that Beets forged Jimmy Don's signature to an application for life insurance six months before his death. After his death, Beets sold Jimmy Don's boat – his separate property – by forging his name to the certificate of title. Jimmy Don's home – also his separate property – mysteriously burned down following failed attempts by Beets to sell it; Beets then sought the proceeds of the fire insurance policy. Not long after Jimmy Don's "disappearance," Beets inquired of a chaplain for the City of Dallas Fire Department, from which Jimmy Don had retired, regarding her entitlement to any of Jimmy Don's

pension or life insurance benefits.  On this evidence, the jury found Beets guilty of murder for remuneration.

## II.

Beets first asserts that her conviction under the "novel" interpretation of Section 19.03(a)(3) adopted in her direct appeal constitutes a violation of Due Process.  See Beets, 767 S.W.2d at 733-37.  A criminal statute must provide "fair warning" to a defendant that certain conduct is prohibited.  See McBoyle v. United States, 283 U.S. 25, 27, 51 S. Ct. 340, 341 (1931) ("[F]air warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.").  Consequently, the Due Process clause prohibits "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language."  Bouie v. City of Columbia, 378 U.S. 347, 352, 84 S. Ct. 1697, 1702 (1964).

Beets portrays herself as a victim of an unforeseeable application of Section 19.03(a)(3).  She asserts that legislative history, extrinsic commentary, and statutes and decisions in other states characterized the statute as covering murder-for-hire, a tripartite transaction in which A employs B to kill C.  She also maintains that the Court of Criminal Appeals had never expressly held, before her case, that anything other than a tripartite murder-for-hire was proscribed.

A look at the statute challenges Beets's position.  Tex. Penal Code § 19.03 provides, in pertinent part:

   (a) A person commits an offense if he commits murder as
   defined under Section 19.02(a)(1) of this code and:

**3**

* * * *

> (3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration.

* * * *

(b) An offense under this section is a capital felony.

Tex. Penal Code § 19.03, amended by Acts 1993, 73d Leg., ch. 900 (substituting "19.02(b)(1)" for "19.02(a)(1)" in subsec. (a)). The statute defines three classes of prohibited conduct: (1) murdering for remuneration, (2) murdering for the promise of remuneration, and (3) employing another to commit murder for remuneration. Beets's actions fell within the first class of proscribed conduct; she murdered her husband to recover life insurance, pension benefits, and his estate. Standing alone, the language of the statute sufficiently apprised Beets that the murder of her husband to recover his estate and insurance benefits would constitute a capital offense. As the Court of Criminal Appeals noted in her direct appeal, "Remunerate encompasses a broad range of situations, including compensation for loss or suffering and the idea of a reward given or received because of some act." Beets, 767 S.W.2d at 734. The court's interpretation, far from offering a surprising or far-fetched construction, stated the everyday meaning of the words used by the legislature.

An earlier decision of the Court of Criminal Appeals, rendered four years before Jimmy Don's murder, heralded the scope of Section 19.03(a)(3) and, thus, the prospect of Beets's capital prosecution. See O'Bryan v. Texas, 591 S.W.2d 464 (Tex. Crim. App.

**4**

1979).  In <u>O'Bryan</u>, the court affirmed the conviction of a defendant who killed one of his children in an attempt to recover the proceeds of recently purchased insurance policies.  <u>See</u> <u>id.</u> at 467.  While the defendant did not even raise and the court did not specifically address the scope of Section 19.03(a)(3), the court described the circumstances surrounding the murders as a means of assessing the defendant's propensity to commit future violent crimes.  In its discussion, the court stated,

> A more calculated and cold-blooded crime than the one for which appellant was convicted can hardly be imagined.  Appellant murdered his child in order to collect life insurance money.  The record reflects Months [sic] of premeditation and planning.

> \* \* \* \*

> Appellant, in order to execute his plan to murder his son and to collect the life insurance proceeds, and to escape detection in doing so, was willing to and attempted to commit murder four more times.

> \* \* \* \*

> In addition, the jury had before it evidence that the appellant's crime was motivated solely by financial gain.

<u>Id.</u> at 480-81. Not only does the defendant's conviction in <u>O'Bryan</u> implicitly undermine Beets's fair warning argument, but the <u>O'Bryan</u> court explicitly relied on the "circumstances of the capital offense" in assessing the defendant's propensity to engage in future acts of violence, and it emphasized the remunerative aspects of the killing.  <u>Id.</u> at 480.

The cases cited by Beets, which purportedly limit Section 19.03(a)(3) to murder-for-hire prosecutions, fail to support her fair warning argument.  The decisions in <u>Hobbs v.</u>

**5**

<u>Texas</u>, 548 S.W.2d 884 (Tex. Crim. App. 1977), <u>Doty v. Texas</u>, 585 S.W.2d 726 (Tex. Crim. App. 1979), and <u>McManus v. Texas</u>, 591 S.W.2d 505 (Tex. Crim. App. 1980), involved the application of Section 19.03(a)(3) to classic tripartite murder-for-hire scenarios. The decisions interpret the statute under the presented facts, but they imply no limit to the statute's scope. Even after these opinions, Beets could not have reasonably concluded, given the express language of Section 19.03(a)(3) and <u>O'Bryan</u>, that her contemplated conduct would not amount to capital murder.

When, as here, a statute specifically prohibits certain conduct, a dearth of specific case law and legislative history that relates the origin of the statute to a particular factual predicate do not establish a Due Process violation. Likewise, secondary legal sources and decisions from other state courts cannot create a constitutional uncertainty in the teeth of the statutory language. Section 19.03(a)(3) and the notorious <u>O'Bryan</u> case provided Beets with sufficient notice in 1983 that her contemplated actions would amount to a capital murder.[1]

---

[1] The State did not waive its arguments on this issue. Texas consistently argued that the language of Section 19.03(a)(3) provided Beets with sufficient notice of the illegality and consequences of her actions.

6

III.

Beets next urges that the jury instructions were constitutionally defective. Beets contends that the jury instructions permitted a guilty verdict if she committed the murder "intentionally" or "knowingly" for remuneration. Because the statute permits conviction of capital murder only if a defendant acts intentionally, Beets asserts that a verdict premised on the lower state of mind would violate due process.

We disagree with Beets's initial premise. The trial court did not instruct the jury in the alternative regarding the mens rea necessary to commit murder-for-remuneration. Although the jury was instructed that a person could intentionally or knowingly commit the underlying murder, the trial court's instructions permitted the jury to find the capital offense of murder-for-remuneration only "if [the murder] is committed for remuneration." (emphasis added). Jurors were further instructed,

> [I]f you find from the evidence beyond a reasonable doubt that [Beets] . . . did knowingly or intentionally cause the murder of . . . Jimmy Don Beets . . . ; and you further find beyond a reasonable doubt that the murder was committed for remuneration . . . then you will find [Beets] guilty of capital murder . . . .

(emphasis added). The trial court consistently distinguished the mens rea required to commit murder from the state of mind that the jury must necessarily find regarding the remuneration element of the capital offense. The instructions required the jury to find that Beets committed the murder in order to receive, or "for," remuneration. Under Texas precedent, this instruction was sufficient. See, e.g., Davis v. Texas, 597 S.W.2d 358, 360 (Tex.

**7**

Crim. App. 1980) (going to store "in order to commit robbery" constitutes intentional conduct); see also, e.g., Black's Law Dictionary 644 (6th ed. 1990) (defining "for" as "[t]he cause, motive or occasion of an act" and "the end with reference to which anything . . . is done"). No constitutional violation occurred.

IV.

Contrary to Beets's final, strained argument, Section 19.03(a)(3) clearly limits the circumstances under which a murder becomes a capital offense. Mere receipt of a benefit following a murder does not constitute murder-for-remuneration under the statute. An individual must commit the predicate murder for the purpose of receiving remuneration, just as Beets did. As such, the statute establishes a genuine limit on the class of death-eligible murderers. See Zant v. Stephens, 462 U.S. 862, 877, 103 S. Ct. 2733, 2742 (1983) ("[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."). Moreover, the Texas sentencing phase performs a further narrowing function by requiring the jury to find affirmatively on certain special issues before sentencing a defendant to death. See Selvage v. Collins, 972 F.2d 101, 103 (5th Cir. 1992).

V.

This panel will not revisit the en banc court's ruling in Beets v. Scott, 65 F.3d 1258 (5th Cir. 1995), cert. denied, 517 U.S. 1157, 116 S. Ct. 1547 (1996). The holding is binding on this

court as the law of the case and review of the decision was denied by the Supreme Court.

VI.

Finding that Beets has raised no constitutional error, this court affirms the decision of the district court. Beets was placed on notice by Tex. Penal Code § 19.03(a)(3) that the murder of her husband for the purpose of recovering his estate, life insurance proceeds, and pension benefits rose to the level of a capital offense. Considering the evidence, the jury properly found that the murder was committed for remuneration. Accordingly, Beets was appropriately sentenced to death for her crime.

**AFFIRMED.**

9